(666 P.2d 730)

No. 54,990

DAVID EARL SMITH, *Appellant*, v. STATE OF KANSAS, *Appellee*.

Opinion filed July 7, 1983.

*Jerome S. Koehler, Jr.,* of Overland Park, for appellant.

*Michael B. Buser,* assistant district attorney, *Dennis W. Moore,* district attorney, and *Robert T. Stephan,* attorney general, for appellee.

Before SWINEHART, P.J., ABBOTT and PARKS, JJ.

ABBOTT, J.: This is an appeal by David Earl Smith from a judgment denying his K.S.A. 60-1507 petition to vacate and set aside his conviction of the crime of first-degree murder.

In 1976, Smith was convicted of burglary, theft and felony murder of his next door neighbor. He appealed to the Kansas Supreme Court. The only issue on appeal was whether the trial court erred in applying the *M'Naghten* test rather than the American Law Institute Model Penal Code definition of insanity. *State v. Smith,* 223 Kan. 203, 574 P.2d 548 (1977).

In this appeal, Smith alleges error concerning the instruction on the felony murder rule and, further, that he was denied the effective assistance of counsel as the result of his attorney's failure to raise the issues argued in this appeal.

In order to understand and appreciate Smith's argument, it is necessary to briefly review the history of the felony murder doctrine in Kansas. The doctrine is English in origin and has been a part of the laws of Kansas beginning with the territorial government in 1855 (Kan. Terr. Stat. 1855, ch. 48, § 1). The territorial statute remained virtually unchanged until 1969 (G.S. 1868, ch. 31, § 6; R.S. 1923, 21-401; K.S.A. 21-401 [Corrick]) and provided that a homicide that occurred during the attempt or perpetration of certain specified crimes, "or other felony," would be murder in the first degree.

By far the most common arrangement in other states is for the statute providing for felony murder to state which collateral

crimes will support a conviction for felony murder. Burglary is generally included in such statutes. Ariz. Rev. Stat. Ann. § 13-1105 (1982 Supp.); Ark. Stat. Ann. § 41-1501(1)(a) (1977); Cal. Penal Code § 189 (West 1982 Supp.); Fla. Stat. § 782.04 (1981); Md. Ann. Code art. 27, § 410 (1957); Minn. Stat. § 609.185 (1982); Mo. Rev. Stat. § 565.003 (1978); Neb. Rev. Stat. § 28-303 (1979); N.J. Stat. Ann. § 2C:11-3a(3) (West 1982); N.Y. Penal Law § 125.25 (McKinney 1975); N.D. Cent. Code § 12.1-16-01 (1981 Supp.); 18 Pa. Cons. Stat. Ann. § 2502 (Purdon 1982 Supp.); W.Va. Code § 61-2-1 (1977). In addition to these states, felony murder includes a killing in the commission of a burglary under 18 U.S.C. § 1111(a) (1976). Further, the A.L.I. Model Penal Code § 210.2(1)(a), (b) (1980) defines murder as a killing committed purposely or knowingly or recklessly, and provides that recklessness is presumed if the killing occurred in the commission of certain crimes, including burglary.

In 1969, the Kansas legislature adopted the new criminal code, replacing K.S.A. 21-401 (Corrick) with 21-3401. In doing so, the revised statute eliminated the enumeration of felonies which specifically gave rise to application of the felony murder doctrine. In 1972, K.S.A. 21-3401 was amended to its present form, which existed at the time of the trial of the defendant, David Earl Smith. It reads:

"Murder in the first degree is the killing of a human being committed maliciously, willfully, deliberately and with premeditation *or committed in the perpetration or attempt to perpetrate any felony.*" (Emphasis supplied.)

The statute does not provide for two separate offenses. It provides that first-degree murder is killing by premeditation or by felony murder. As noted in PIK Crim. 2d 56.02, Comment:

"A prosecution under this rule [felony murder] merely changes the type of proof necessary to support a conviction. Proof that the homicide was committed in the perpetration of a felony is tantamount to premeditation and deliberation which otherwise would be necessary to constitute murder in the first degree. *State v. McCowan,* 226 Kan. 752, 759, 602 P.2d 1363 (1979)."

Nearly all jurisdictions require that the underlying felony be inherently dangerous to human life, and Kansas has followed that requirement for many years. *State v. Roselli,* 109 Kan. 33, 198 Pac. 195 (1921). Kansas has struggled and is still struggling with which felonies are inherently dangerous to human life and *how* that determination is to be made. A majority of the states

considers the nature of the felony in the abstract *and* the circumstances of its commission in ascertaining whether the particular felony was inherently and foreseeably dangerous to human life. Although no longer the rule in Kansas, it was the rule as recent as *State v. Goodseal*, 220 Kan. 487, 553 P.2d 279 (1976).

The minority rule (sometimes referred to as the California rule) considers the elements of the collateral felony in the abstract and does *not* consider the circumstances of its commission.

In *Goodseal*, the Supreme Court considered whether the unlawful possession of a firearm was inherently dangerous to human life. Goodseal had the gun in his hand and, by his own admission, was trying to scare the victim when the gun discharged, killing the victim. The Supreme Court stated:

"[W]here doubt may exist, we see nothing wrong in considering both the nature of the offense in the abstract and the circumstances of its commission in determining whether a particular felony was inherently dangerous to human life. Some felonies, such as aggravated robbery, viewed in the abstract alone, are of such nature as to be inherently dangerous to human life, while another which seems of itself not to involve any element of human risk may be committed in such a dangerous manner as to be of the same character." 220 Kan. at 493.

The Supreme Court concluded that the trial court correctly held as *a matter of law* that unlawful possession of the firearm was a sufficient basis for application of the felony murder rule. Justice Prager dissented, urging adoption of the California minority view that the collateral felony be viewed *solely* in the abstract and that the particular circumstances of the felony not be considered. Justices Fromme and Owsley joined in the dissent.

The defendant in this case was convicted on July 16, 1976. *Goodseal* was filed on July 23, 1976.

In *State v. Underwood*, 228 Kan. 294, 615 P.2d 153 (1980), the Kansas Supreme Court again considered a first-degree murder case in which the collateral felony was unlawful possession of a firearm by one who had been convicted of a prior felony. On a four to three vote, the Supreme Court adopted the California rule and overruled *Goodseal* and its previous line of cases, holding:

"In determining whether a particular collateral felony is inherently dangerous to human life so as to justify a charge of felony murder under K.S.A. 21-3401, the elements of the collateral felony should be viewed in the abstract, and the circumstances of the commission of the felony *should not* be considered in making the determination." 228 Kan. 294, Syl. ¶ 5 (emphasis supplied).

The Supreme Court then held that the unlawful possession of a firearm when considered in the abstract is not a felony inherently dangerous to human life; Underwood's conviction of first-degree murder was reversed and the case remanded for a new trial.

Since oral argument in the case at bar, our Supreme Court has handed down another opinion on the subject of *what* felonies are inherently dangerous and *how* to determine that issue. In *State v. Lashley*, 233 Kan. 620, 664 P.2d 1358 (1983), the Supreme Court *unanimously* affirmed a first-degree murder conviction based on felony murder where the collateral felony was felony theft. In the law of the case, the Court reaffirmed the syllabus in *Underwood* set out above concerning felony murder, and then held that felony theft "when considered in the abstract" is inherently dangerous to human life and will sustain a conviction for murder in the first degree under the felony murder rule. We are bound by that decision.

The Supreme Court stated that felony theft is inherently dangerous to human life because "[t]he act of taking may be open, with a reckless disregard of the consequences, and even with knowledge of the owner." Although not stated in the syllabus, the bench and bar is instructed that "theft may be the underlying felony in a charge of felony murder *only* in cases where the discovery of the thief during the course of the theft results in the death of a person." (Emphasis supplied.) The Supreme Court's reasoning that the thief might be caught in the act, and the caveat that theft is inherently dangerous *only* when that occurs, seems to apply not only to those thefts the Court holds to be not inherently dangerous to human life (theft by deception or theft of mislaid property), but also to the unlawful possession of a firearm, or to any other felony for that matter. It would appear that this time Kansas has adopted a hybrid felony murder rule that to some extent, at least, retreats from viewing the elements of the crime in the abstract (*i.e.*, theoretical considerations only, apart from practical or actual conditions).

Here, Smith argues that we should follow *Underwood,* that when viewed in the abstract, burglary, as opposed to aggravated burglary, is not inherently dangerous to human life. Much of that argument is based on the fact that burglary does not involve the presence of a human being in the structure burglarized.

The Supreme Court stated in *Underwood* that "the rule as this day declared shall govern the present case and be applied to other cases pending on the date the opinion in this case is filed and to all future cases in which the question has been timely raised and presented in the trial court." 228 Kan. at 306-07. The issues defendant complains of in this 60-1507 action were not raised in the trial court, and thus the rule in *Goodseal* applies. In any event, as to Smith's petition, it does not matter whether we view the elements of the burglary in the abstract or whether we view them in the abstract and also consider the circumstances of the commission of the felony in determining whether the burglary was inherently dangerous to human life, for as we view *Lashley* we would reach the same result.

Smith was discovered by the victim while he was in her home burglarizing it, and he beat her to death with a handgun. If we use the *Goodseal* rule as is required by *Underwood,* the circumstances surrounding the commission of the burglary (burglarizing a private residence while armed and the ensuing brutal murder) were inherently dangerous to human life.

Even if we were to apply the rule in *Underwood,* as interpreted by *Lashley,* it would not benefit Smith, for being discovered in the commission of a burglary of a private dwelling is obviously inherently more dangerous to human life than being caught in the act of committing felony theft. We are cognizant of Smith's argument as to the distinction between aggravated burglary and burglary. A burglar, however, can never be certain the premises or property of another is unoccupied when entered or that it will remain so. Thus, a potential confrontation with a human is present in every burglary, not only when a person is either in or entering whatever is being burglarized, but also when anyone approaches as the burglar attempts to leave the burglarized premises. We conclude that burglary, as defined by K.S.A. 21-3715, is inherently dangerous to human life when its elements are viewed in the abstract.

Smith next argues that if *Goodseal* applies, the trial court should have submitted the inherent danger issue to the jury, and his sentence must be vacated because neither the court nor the jury made an independent finding that the burglary he committed was inherently dangerous. By giving an instruction on felony

murder, the trial court effectively ruled that burglary is inherently dangerous as a matter of law.

There was no objection to the instruction, therefore there are no grounds for reversal.unless the instruction was clearly erroneous. *City of Overland Park v. Estell,* 8 Kan. App. 2d 182, 186, 653 P.2d 819 (1982), *rev. denied* 232 Kan. 875 (1983). Our Supreme court has recently ruled in a felony murder case involving the collateral felony of attempted burglary that an instruction almost identical to that complained of here was not clearly erroneous. *State v. Hearron,* 228 Kan. 693, 697, 619 P.2d 1157 (1980).

In any event, the Supreme Court in *Goodseal* stated the trial court "correctly held as a matter of law that the collateral felony, unlawful possession of a firearm, was a sufficient basis for application of the felony murder rule." 220 Kan. at 493. Having held that burglary when viewed in the abstract is inherently dangerous to human life, it follows that the trial court correctly decided the issue as a matter of law.

Smith next claims he was denied effective assistance of counsel by reason of counsel's not having raised the issues defendant raises here. Our having decided those issues adversely to defendant, it follows that his claim of ineffective assistance of counsel has no merit. In any event, the effectiveness of counsel is gauged by "the totality of the representation," and we have no hesitancy in holding that defendant's claim of ineffective assistance of counsel is without merit.

Affirmed.