MARCELLUS H. BAKER, *Appellant,* v. STATE OF KANSAS, *Appellee.*

and

No. 61,155

STATE OF KANSAS, *Appellee,* v. MARCELLUS H. BAKER, *Appellant.*

(755 P.2d 493)

2

Opinion filed April 29, 1988.

*Daniel E. Stonecipher,* special appellate defender, of Junction City, argued the cause, and *Benjamin C. Wood,* chief appellate defender, of Topeka, and *Ralph DeZago,* special appellate defender, of Junction City, were on the brief for appellant.

*Rodney H. Symmonds,* county attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

HOLMES, J.: Two appeals by Marcellus H. Baker from issues generated by the same criminal convictions have been consolidated in this court. Case No. 60,288 is a direct appeal by Baker from an adverse ruling in his action pursuant to K.S.A. 60-1507. Case No. 61,155 is an appeal by Baker from the denial of his motion for a new trial based upon newly discovered evidence pursuant to K.S.A. 22-3501. Appellant's convictions of rape (K.S.A. 1987 Supp. 21-3502), aggravated burglary (K.S.A. 21-3716), and criminal damage to property (K.S.A. 1987 Supp. 21-3720) were affirmed by this court in an unpublished opinion No. 57,237, dated June 21, 1985.

The following facts are taken from this court's prior opinion.

In the early hours of January 15, 1984, Ms. N. awoke in her Emporia home to find a male intruder standing in the doorway of her bedroom. The intruder entered the bedroom and subdued and raped Ms. N. After he left she called police. Officers Turner and Senn, of the Emporia police department, responded. Snow was falling at the time and there were about two inches of snow on the ground. The officers found footprints in the snow under a kitchen window from which the screen had been cut for the intruder to gain access. Similar footprints were found on the front porch leading away from the house. While Officer Senn interviewed the victim, Turner followed the footprints, which had a distinctive pattern and appeared to have been made by tennis shoes. The footprints led to the front door of an apartment building. Thereafter the two officers were met at the apartment house by Lt. Heinitz of the Emporia police department. Officer Senn advised the other two that the victim had described her attacker as being a black male, about six feet tall, with a medium build and possibly wearing a dark blue stocking cap, dark-colored jacket, leather gloves, and blue jeans. The three officers then followed the footprints into a public hallway in the apartment building and up a flight of stairs to the second floor. Inside

the building the footprints were only partially observable by snow and water left on the stairs and floor. They followed the partial prints and water to an apartment on the second floor, where they found puddles of water in front of the door to Apartment # 1.

The officers knocked on the apartment door, which was opened by a woman. When asked if she lived there alone, she replied that her "husband" lived there also. The officers asked if he could come to the front door. While she went to get him, the officers remained in the public hallway. Marcellus H. Baker, a black male who matched the physical description provided by the victim, then came to the door. Turner told Baker they were investigating an incident that occurred in the 1000 block of Mechanic, and asked if he owned a pair of tennis shoes. Baker replied, stating all he owned was a pair of boots. At Turner's request Baker went to get his boots and, as he did so, said, "I guess I do own a pair of tennis shoes." Turner asked him to bring those as well. When Baker returned to the front door, Turner asked to see the bottoms of the tennis shoes. The bottom tread of the tennis shoes matched the footprints in the snow. Baker's shoes were wet with moisture and still had some snow packed between the treads. He was then advised of his constitutional rights under *Miranda* and placed under arrest. A pair of leather gloves was observed on the floor and, after Baker had dressed, he was taken to the police station along with the tennis shoes and gloves seized by the officers. Additional facts will be developed as necessary for the consideration of the issues now on appeal. We will consider each appeal separately.

Case No. 60,288

Baker has appealed from the trial court's denial of his K.S.A. 60-1507 motion based upon the assertion that he was denied the effective assistance of counsel in his original appeal. Baker contends that his appointed counsel should have raised, in the appeal of his convictions, the issues of (1) whether Baker had been improperly questioned by police without having been informed in full of his *Miranda* rights, and (2) whether the trial court abused its discretion by imposing an excessively long sentence.

Kansas appellate courts have apparently addressed only once a claim of ineffective assistance of counsel for failure to raise

particular issues on direct appeal of a conviction. See *Smith v. State*, 8 Kan. App. 2d 684, 666 P.2d 730 (1983). While *Smith*, like this case, was an appeal from the denial of a K.S.A. 60-1507 motion, the Court of Appeals disposed of the argument summarily and without citing authority. See 8 Kan. App. 2d at 689. As to ineffective assistance of counsel claims in general, however, this court has followed the United States Supreme Court holding in *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), which requires the defendant asserting such a claim to prove that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness and (2) the deficient performance prejudiced the defense so as to deprive defendant of a fair trial. See *State v. Bodtke*, 241 Kan. 96, 99, 734 P.2d 1109 (1987); *Chamberlain v. State*, 236 Kan. 650, Syl. ¶ 3, 694 P.2d 468 (1985).

As to an allegation of ineffective assistance of counsel on appeal, the great majority of state courts apparently follow the view that defense counsel is under no duty to assert on appeal every possible question of law in order to preclude a subsequent finding that defendant was provided ineffective assistance of counsel. See Annot., 15 A.L.R.4th 582 § 3[a]; § 23. The United States Supreme Court adopted this view in *Jones v. Barnes*, 463 U.S. 745, 77 L. Ed. 2d 987, 103 S. Ct. 3308 (1983), reversing the Second Circuit Court of Appeals' holding that when the appellant asks his assigned counsel to raise particular issues on appeal, counsel must do so to the best of his professional ability. In rejecting that principle, the Supreme Court reasoned:

"[B]y promulgating a *per se* rule that the client, not the professional advocate, must be allowed to decide what issues are to be pressed, the Court of Appeals seriously undermines the ability of counsel to present the client's case in accord with counsel's professional evaluation.

"Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." 463 U.S. at 751-52.

"For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy that underlies *Anders*. [*Anders v. California*, 386 U.S. 738, 18 L. Ed. 2d 493, 87 S. Ct. 1396 (1967).] Nothing in the Constitution or our interpretation of that document requires such a standard." 463 U.S. at 754.

In short, the Court held that a criminal defendant has no consti-

tutional right to have appellate counsel raise every nonfrivolous issue that the defendant requests. See 463 U.S. at 754 n.7.

In the instant case appellant assumes that the same standard for obtaining reversal of a conviction for ineffective assistance of counsel at trial will be applied by this court to a claim of ineffective assistance of counsel on appeal. The State does not challenge that assumption, and in fact relies upon the *Strickland* two-pronged test in arguing that appellant has failed to carry his burden of proof on either prong. Since this court has not had occasion to squarely address the question of whether the *Strickland* standard, as adopted by this Court in *Chamberlain*, applies to claims that *appellate* counsel's assistance was ineffective, some background may be helpful.

The right to counsel is rooted in the Sixth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and in Section 10 of the Kansas Constitution's Bill of Rights. Both those provisions deal with the right to counsel in the context of a *criminal trial*. While there is no *constitutional* right to appeal a conviction, the United States Supreme Court has held that under equal protection principles an indigent defendant is constitutionally entitled to the assistance of counsel when a first appeal is granted by the state as a matter of right. *Douglas v. California*, 372 U.S. 353, 9 L. Ed. 2d 811, 83 S. Ct. 814 (1963). The general right to counsel was later articulated to mean the right to *effective* assistance of counsel. *Cuyler v. Sullivan*, 446 U.S. 335, 344, 64 L. Ed 2d 333, 100 S. Ct. 1708 (1980).

While the two-pronged test articulated in *Strickland* applied to claims of ineffective counsel at the criminal trial stage, that test was applied to a claim of ineffective counsel on appeal in *Smith v. Murray*, 477 U.S. 527, 91 L. Ed. 2d 434, 106 S. Ct. 2661 (1986). In *Smith v. Murray*, the appellant was appealing from a denial of a petition for habeas corpus in the federal district court based upon counsel's decision not to include as an issue in his original state court appeal the admission of certain testimony by a psychiatrist. The Supreme Court, in affirming the denial of the petition, stated:

"Nor can it be seriously maintained that the decision not to press the claim on appeal was an error of such magnitude that it rendered counsel's performance constitutionally deficient under the test of *Strickland v. Washington*, 466 U.S.

668, [80 L. Ed. 2d 674, 104 S. Ct. 2052] (1984). *Carrier [Murray v. Carrier*, 477 U.S. 478, 91 L. Ed. 2d 397, 106 S. Ct. 2639 (1986),] reaffirmed that 'the right to effective assistance of counsel . . . may in a particular case be violated by even an isolated error . . . if that error is sufficiently egregious and prejudicial.' Ante, at 496; see also *United States v. Cronic*, 466 U.S. 648, 657, n. 20, 80 L. Ed. 2d 657, 104 S. Ct. 2039 (1984). But counsel's deliberate decision not to pursue his objection to the admission of Dr. Piles' testimony falls far short of meeting that rigorous standard. After conducting a vigorous defense· at both the guilt and sentencing phases of the trial, counsel surveyed the extensive transcript re-searched a number of claims, and decided that, under the current state of the law, thirteen were worth pursuing on direct appeal. This process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy. *Jones v. Barnes*, 463 U.S. 745, 751-52, 77 L. Ed. 2d 987, 103 S. Ct. 3308 (1983). . . . [A]s *Strickland v. Washington* made clear, '[a] fair assessment of attorney performance requires that every effort be made to eliminate the distort-ing effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.' 466 U.S. at 689, 80 L. Ed. 2d 674, 104 S. Ct. 2052. Viewed in light of Virginia law at the time Mr. Pugh submitted his opening brief to the Supreme Court of Virginia, the decision not to pursue his objection to the admission of Dr. Piles' testimony fell well within the 'wide range of professionally competent assistance' required under the Sixth Amendment to the Federal Constitution." 477 U.S at 535-36.

We conclude that the test to be applied to a claim of ineffective assistance of counsel on appeal is the same test as articulated by the Supreme Court in *Strickland* and as adopted by this court in *Chamberlain*. For a defendant to be successful in asserting that he was denied effective assistance of counsel on appeal, it must be shown that (1) counsel's performance, based upon the totality of the circumstances, was deficient in that it fell below an objective standard of reasonableness, and (2) the appellant was prejudiced to the extent that there is a reasonable probability that, but for counsel's deficient performance, the appeal would have been successful. In applying such a standard the caveats and direction articulated in *Strickland* and *Chamberlain* apply equally to a claim of ineffective assistance of counsel on appeal. As stated in *Strickland*:

"[A] court deciding an actual ineffectiveness claim must judge the reasonable-ness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the

identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." 466 U.S. at 690.

We now turn to the specific issues which appellant asserts in contending he was denied the effective assistance of counsel on his original appeal. Baker's first contention is that his appellate counsel should have raised as an issue on appeal that he was improperly questioned by police without having been fully informed of his *Miranda* rights. He contends that the investigating police officers recited only part of the *Miranda* warning to him before he made certain incriminating statements which were later admitted into evidence against him. Appellant argues that it was unreasonable not to have raised this issue on appeal since his trial counsel raised the issue in a pretrial motion to suppress certain statements made by Baker. Baker essentially contends that there was a good argument that he was in "custody" while police conducted their pre-arrest questioning at the door of his residence, that he was therefore constitutionally entitled to a full recitation of his *Miranda* rights, and that the use against him of inconsistent pre-*Miranda* statements he made in response to police questioning was improper. It is then asserted the alleged improper questioning could have been the basis for a "fruit of the poisonous tree" challenge to the admission of certain physical evidence allegedly found as a result of Baker's pre-*Miranda* statements. The State's arguments in response essentially urge that Baker was not in custody when he made his pre-*Miranda* statements and that the statements were not involuntary.

Baker specifically challenges the admission of certain answers he made to the police officers when he was first confronted at the door of his apartment. Upon being asked by police whether he owned some tennis shoes, Baker allegedly responded, "No, I don't have any tennis shoes. I have some boots." The officer then asked if Baker would go get the boots. Baker turned and started walking back into his apartment as if to retrieve the boots, then said, "Oh, I guess I do own a pair of tennis shoes." The officer asked him to bring the tennis shoes also. Baker complied. The

officer asked Baker if he could see the bottoms of the tennis shoes, and Baker again complied by flipping them over to exhibit the soles. At that point, the officer took the shoes from Baker without force or resistance and placed him under arrest, reading the *Miranda* rights in full to him from a card. There is absolutely no showing that at the time of the statements made by Baker, he was in custody or under arrest. At that time; the officers were merely conducting their preliminary investigation and the questions complained of were not part of any custodial interrogation.

At the conclusion of the suppression hearing the court concluded:

"On the *Jackson-Denno* part of this for statements made, I find that there were no involuntary statements made in any way in the conversation leading up to the arrest, and from the time that the *Miranda* warning was given apparently there was not further conversation or statement made after that. And so I find that any statements made that have been testified hereto are not to be suppressed. They're not in violation of Mr. Baker's rights."

This issue of the appellant lacks merit.

Next, appellant contends that his first appellate counsel should have argued on appeal that his sentence was excessive. Appellant was sentenced to concurrent terms of 10 to 20 years for rape, 3 to 10 years for aggravated burglary, and six months for criminal damage to property. Thus, the controlling sentence was the 10 to 20 years for rape. The range for the minimum sentence for rape is 5 to 15 years while the range for the maximum is 20 years to life. In *State v. Hamilton*, 240 Kan. 539, Syl. ¶ 1, 731 P.2d 863 (1987), we again stated the general rule:

"A sentence imposed which is within the statutory limits will not be disturbed on appeal, provided it is within the realm of discretion on the part of the trial court and not a result of partiality or prejudice."

There has been absolutely no showing of partiality or prejudice and the sentences were clearly within the statutory limits and within the discretion of the court.

Both issues asserted by appellant in his claim of ineffective assistance of counsel are totally without merit and appellant has failed to meet either prong of the test adopted earlier in this opinion. The failure of counsel to raise an issue on appeal is not, per se, to be equated with ineffective assistance of counsel. As stated by the Supreme Court in *Jones v. Barnes*, 463 U.S. 745, 77 L. Ed. 2d 987, 103 S. Ct. 3308 (1983):

"Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues. Justice Jackson, after observing appellate advocates for many years, stated:

'One of the first tests of a discriminating advocate is to select the question, or questions, that he will present orally. Legal contentions, like the currency, depreciate through over-issue. The mind of an appellate judge is habitually receptive to the suggestion that a lower court committed an error. But receptiveness declines as the number of assigned errors increases. Multiplicity hints at lack of confidence in any one. . . . [E]xperience on the bench convinces me that multiplying assignments of error will dilute and weaken a good case and will not save a bad one.' Jackson, Advocacy Before the United States Supreme Court, 25 Temple L.Q. 115, 119 (1951).

Justice Jackson's observation echoes the advice of countless advocates before him and since." 463 U.S. at 751-52.

We agree. In an appeal from a criminal conviction, appellate counsel should carefully consider the issues, and those that are weak or without merit, as well as those which could result in nothing more than harmless error, should not be included as issues on appeal. Likewise, the fact that the defendant requests such an issue or issues to be raised does not require appellate counsel to include them. Conscientious counsel should only raise issues on appeal which, in the exercise of reasonable professional judgment, have merit.

The judgment in Case No. 60,288 must be affirmed.

## Case No. 61,155

In this case, the appellant asserts the district court committed error in denying his motion for a new trial based upon newly discovered evidence. The appellant argues that a new trial should have been granted for the purpose of permitting the defendant to impeach the testimony of the State's expert on forensic serology. The expert witness testified that approximately 20.7 percent of the black population are Type A secretors, a combination of two genetic traits—Type A blood and the ability to secrete evidence of one's blood type in other body fluids. The appellant contends that he could have impeached this testimony had he been provided a copy of the study upon which the expert relied. He points to a paragraph in the study that indicates its results "strictly apply only in California" for blacks, since the study sample of blacks was made up only of California residents. Appellant argues that the study's results were improperly gen-

eralized to the Kansas black population. The appellant's argument relies solely on the potential value of the published study in impeaching or discrediting the testimony of the State's expert witness, Susan Scholl.

This court has reiterated several times the rules governing motions for new trial on the ground of newly discovered evidence, most recently in *State v. Munyon*, 240 Kan. 53, 63, 726 P.2d 1333 (1986):

" 'The granting of a new trial for newly discovered evidence is in the trial court's discretion. (*State v. Larkin*, 212 Kan. 158, 510 P.2d 123, *cert. den.* 414 U.S. 848, 38 L. Ed. 2d 95, 94 S. Ct. 134.) A new trial should not be granted on the ground of newly discovered evidence unless the evidence is of such materiality that it would be likely to produce a different result upon re-trial. (*State v. Hale*, 206 Kan. 521, 479 P.2d 902.) The credibility of the evidence offered in support of the motion is for the trial court's consideration. (*State v. Anderson*, 211 Kan. 148, 505 P.2d 691; *State v. Larkin*, [212 Kan. 158].) The burden of proof is on defendant to show the alleged newly discovered evidence could not with reasonable diligence have been produced at trial. (*State v. Lora*, 213 Kan. 184, 515 P.2d 1086; *State v. Arney*, 218 Kan. 369, 544 P.2d 334.) The appellate review of an order denying a new trial is limited to whether the trial court abused its discretion. (*State v. Campbell*, 207 Kan. 152, 483 P.2d 495; *State v. Anderson*, [211 Kan. 148].)' "

When the alleged newly discovered evidence merely tends to impeach or discredit the testimony of a witness, a new trial will not be granted. *State v. Richard*, 235 Kan. 355, 363, 681 P.2d 612 (1984).

There are numerous reasons why the trial court was correct in its denial of the motion. At the outset it is questionable that the California study relied upon by the State's expert witness could even be classified as newly discovered evidence in this case. On direct examination, Ms. Scholl testified that her opinion was based, at least in part, on the California study by Dr. Benjamin Grunbaum, and others, which was published in the *Journal of Forensic Sciences*. Counsel for the defense then made the following objection:

"I'm going to object. If we have a learned treatise, I think the very least that we could do is let the Defense have an opportunity to review it. Apparently the witness is basing her—she has no information but is basing this instead upon a study done in California. We simply ask that we be given an opportunity to review that document, and we would object on the grounds that it's hearsay failing an opportunity for the Defense to review it."

The trial judge ruled:

"Well, I believe this witness has been adequately qualified to give such testimony concerning this and I think the foundation is adequate, so I will overrule the objection. You may answer the question."

At this point counsel was fully aware of the study, the nature of it, the name of the authors, and where the study was published. No request for a recess was made by defense counsel and no request was ever made to the prosecutor or the witness to furnish a copy of the study. Assuming that the Grunbaum study could not have been discovered with reasonable diligence before trial, it was certainly available on the first day of a three-day trial. Baker was sentenced on May 3, 1984, yet this motion based upon "newly discovered evidence" was not filed until April 1987. Apparently, no attempt was made to obtain a review of what is now asserted to be critical evidence for nearly three years after the original conviction.

Secondly, the alleged newly discovered evidence was not material in this case. Materiality, as it relates to newly discovered evidence not disclosed by the prosecution, was defined by the Supreme Court in *United States v. Bagley*, 473 U.S. 667, 87 L. Ed. 2d 481, 105 S. Ct. 3375 (1985). The court stated:

"The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." 473 U.S. at 682.

In the present case, appellant does not contend that the prosecution acted in bad faith in not furnishing a copy of the Grunbaum study to defense counsel or that the failure to provide it was an oversight. Appellant has failed to demonstrate in any way how this particular study or the impeachment of Susan Scholl would have led to a different result in this case. The evidence against Baker was overwhelming. In addition to that recited earlier, the victim, following the attack upon her, found in her bedroom a brown coat button which did not belong to her and which she had never seen before. Baker's dark brown winter coat recovered pursuant to a search warrant was missing a button which was identical in design, size, and shape to the one found in the victim's apartment. Further incriminating evidence need not be recited here. Suffice it to say, impeachment of the testi-

mony of Susan Scholl could not, with any reasonable probability, have affected the outcome of appellant's trial.

Other arguments in support of this appeal are equally without merit and the judgment in this appeal must also be affirmed.

The judgments in both appeals are affirmed.