NOT DESIGNATED FOR PUBLICATION

No. 128,886

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ANTHONY LARON ROBERTS JR.,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Douglas District Court; SALLY D. POKORNY, judge. Submitted without oral argument. Opinion filed April 24, 2026. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Ethan C. Zipf-Sigler*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before GARDNER, P.J., ARNOLD-BURGER and SCHROEDER, JJ.

PER CURIAM: Anthony Laron Roberts Jr. timely appeals from the summary denial of his K.S.A. 60-1507 motion. After careful review of the record, we find Roberts failed to set forth any claims showing he was entitled to an evidentiary hearing under K.S.A. 60-1507. Thus, we affirm.

1

The full factual and procedural background underlying Roberts' convictions and sentences was set forth in his direct appeal and need not be repeated here.

Roberts was convicted for involvement in a shooting in downtown Lawrence near the intersection of 11th Street and Massachusetts Street around 1:30 a.m. on October 1, 2017. Three people—Leah Brown, Colwin Henderson, and Tre'mel Dean—were killed, and two others—Tahzay Rayton and Royelle Hunt—were injured. Roberts was charged with two counts of first-degree felony murder for killing Brown and Dean; intentional second-degree murder of Henderson; and attempted second-degree murder of Rayton. Two codefendants, Ahmad Rayton and Dominique McMillon, were also charged with offenses related to the shooting. All three were bound over for trial after a joint preliminary hearing. However, the proceedings were severed for trial.

At trial, the State asserted Roberts and a group of his friends came to Lawrence from Topeka because one of their friends, Dacorey Brown, had been in a fight with one of Henderson's friends, Jalen Richardson. Roberts' and Henderson's groups eventually confronted each other, which led to the shooting. Roberts was not arrested on the night of the shooting but was stopped by police shortly after due to an unrelated traffic violation. During the stop, police discovered Roberts had a Glock 26 9-millimeter pistol. After law enforcement determined the gun was not stolen, Roberts and his friends were allowed to leave. As the investigation progressed, law enforcement determined there were two shooters as there were two types of bullets and bullet fragments recovered—9 millimeter and .40 caliber.

Law enforcement eventually identified Roberts and Ahmad Rayton as suspects. The .40 caliber bullets had been fired from the same gun, and the DNA profile on the shell casings was consistent with Ahmad Rayton. The 9 millimeter shell casings were

linked to Roberts' gun, but his DNA was not on the shell casings. Ballistic evidence also could not conclusively link the bullets and bullet fragments recovered from the victims to Roberts' gun. However, video evidence from locations near the shooting reflected Roberts fired the first set of shots that hit Dean, Brown, Henderson, and Tahzay Rayton. Ahmad Rayton fired the second set of shots, which hit Hunt. Various witnesses also identified Roberts and Ahmad Rayton as the shooters.

Roberts offered various theories in his defense. He argued the forensic evidence did not show he shot anyone, but, even if he did, he had no intent to kill. Roberts also asked the jury to consider several lesser included offenses. He further argued he acted in self-defense. The jury did not buy his arguments. He was convicted of two counts of first-degree felony murder, one count of intentional second-degree murder, and one count of attempted second-degree murder. He was sentenced to 226 months' imprisonment with two consecutive sentences of imprisonment for life with a mandatory minimum of 25 years. His convictions were affirmed on direct appeal. *State v. Roberts*, 314 Kan. 835, 853, 503 P.3d 227 (2022).

Following his unsuccessful direct appeal, Roberts filed a pro se K.S.A. 60-1507 motion, raising multiple claims of ineffective assistance of trial and direct appeal counsel, and further asserting the charging affidavit was fraudulent. As best we can determine, Roberts' complaints about his trial counsel generally turned on:  lack of preparation for trial; failure to inform him of the theory of defense; failure to provide him discovery; failure to investigate and secure witnesses; failure to hire expert witnesses; and failure to request jury instructions on lesser included offenses. His complaints about direct appeal counsel were based on an alleged conflict of interest, but he failed to explain the nature of the alleged conflict.

The State responded, asking the district court to summarily deny Roberts' claims as conclusory. Roberts then filed a motion to amend his original pleading, which was largely repetitive of his initial claims. But he added or expanded his arguments to include:

- Trial counsel was ineffective for failing to prepare for trial;
- Trial counsel failed to investigate and interview his codefendants and Brown to rebut the State's theory that Roberts and his friends traveled to Lawrence because Brown had been attacked earlier that evening;
- Trial counsel failed to object to defective jury instructions;
- Appellate counsel should have raised a claim of ineffective assistance of trial counsel and against cocounsel on direct appeal;
- His appellate counsel did not consult with him regarding the appeal;
- One of his appellate attorneys, Shaye Downing, had a conflict of interest due to representing a State's witness, Ty'Ron Michael; and
- Appellate counsel were deficient in failing to raise certain issues on appeal.

The State filed a second response, asserting Roberts' motion to amend was improper as untimely. In its response, the State shed some light on the conflict of interest by appellate counsel. The State explained Downing began representing Michael in an unrelated case in Shawnee County in 2020. This was after Roberts' jury trial in Douglas County concluded in 2019 but before his direct appeal was heard. Michael had been an endorsed witness for the State but never testified at Roberts' trial. The State acknowledged there could have been a conflict of interest but argued Roberts could not demonstrate he was prejudiced as a result.

The district court summarily denied Roberts' K.S.A. 60-1507 motion. From the record before us, it does not appear the district court considered Roberts' motion to amend. The district court summarized Roberts' claims as follows:

"(l) Ineffective assistance of trial counsel for failing to investigate the truthfulness of the probable cause affidavit filed by the State in support of the complaint.

"(2) Ineffective assistance of trial counsel in failing to subpoena the codefendants, who were charged in separate cases and still awaiting trial, to testify on his behalf.

"(3) Ineffective assistance of trial counsel for failing to call 'important witnesses' and thoroughly investigate 'who may have been effective in the defense claim and to prove no motive or intent.'

"(4) Ineffective assistance of trial counsel for failure to investigate.

"(5) Ineffective assistance of trial counsel by withholding discovery from Roberts.

"(6) Ineffective assistance of trial counsel based on the allegation counsel was serving subpoenas on the State's witnesses during trial.

"(7) Ineffective assistance of trial counsel for failing to request lesser included instructions.

"(8) Ineffective assistance of appellate counsel, based on a conflict of interest.

"(9) It is unclear whether Roberts is alleging ineffective assistance of trial counsel or appellate counsel for failing to hire an investigator, a ballistics expert and a forensics expert."

The district court found Roberts had not set forth any valid grounds for relief, concluding:

(1)     Any defect in the probable cause affidavit was cured by the presentation of evidence and examination of the witnesses at trial, and Roberts failed to explain how any such defect affected the results of trial;

(2)     Roberts failed to show his counsel could have "persuaded" his codefendants to testify and risk self-incriminating and had not explained what they may have testified to and how it would have helped his case;

(3)     Roberts failed to specifically identify other witnesses his trial counsel should have investigated or explain what information they could have provided to support his defense;

5

(4)     Roberts failed to specify anything else his trial counsel should have investigated;

(5)     Roberts had not established his trial counsel was obligated to provide him with discovery and had not demonstrated the outcome of trial would have been different if he had been provided discovery;

(6)     The fact Roberts' counsel was serving subpoenas on the State's witnesses as they were leaving the witness stand did not demonstrate a lack of preparation; rather, this was to secure their presence if they needed to be recalled;

(7)     Roberts' argument that a lesser included offense instruction for voluntary manslaughter of Henderson should have been requested was rejected on direct appeal because such an instruction would have been legally inappropriate, and Roberts failed to identify any other instructions that should have been requested;

(8)     Roberts failed to explain any prejudice as a result of a conflict of interest by trial or appellate counsel; and

(9)     Roberts' trial counsel was not deficient for not seeking a ballistics expert because the State's evidence was favorable to Roberts. The ballistic evidence was inconclusive whether the bullets and/or bullet fragments retrieved from the victims' bodies were fired from Roberts' gun, and there was no DNA recovered from the shell casings. Roberts further failed to explain what an effective investigator could have done for any other purpose relevant to his defense.

The district court then concluded Roberts failed to demonstrate his attorneys performed deficiently before the district court or the appellate court and further failed to identify or explain any prejudice as a result. Additional facts are set forth as necessary.

6

Roberts now argues the district court erred in denying his motion without conducting an evidentiary hearing. His claims on appeal all relate to allegations of ineffective assistance of trial counsel and appellate counsel.

*Standard of Review and Applicable Legal Principles*

"'When the district court summarily denies a K.S.A. 60-1507 motion, an appellate court conducts de novo review to determine whether the motion, files, and records of the case conclusively establish that the movant is not entitled to any relief.'" *State v. Roberts*, 310 Kan. 5, 12, 444 P.3d 982 (2019). A movant has the burden to prove that an evidentiary hearing is warranted by making more than conclusory contentions and showing that an evidentiary basis exists or is available in the record. *Noyce v. State*, 310 Kan. 394, 398, 447 P.3d 355 (2019).

In reviewing a district court's decision on claims of ineffective assistance of counsel, we review the district court's factual findings using the substantial competent evidence standard. We review the district court's legal conclusions based on those facts applying a de novo standard of review. *State v. Evans*, 315 Kan. 211, 218, 506 P.3d 260 (2022).

> "Claims of ineffective assistance of trial counsel are analyzed under the two-prong test articulated in *Strickland v. Washington*, 466 U.S. 668, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and adopted by the Kansas Supreme Court in *Chamberlain v. State*, 236 Kan. 650, 656-57, 694 P.2d 468 (1985). Under the first prong, the defendant must show that defense counsel's performance was deficient. If successful, the court moves to the second prong and determines whether there is a reasonable probability that, absent defense counsel's unprofessional errors, the result would have been different.

"To establish deficient performance under the first prong, the defendant must show that defense counsel's representation fell below an objective standard of reasonableness. Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel must be highly deferential. A fair assessment of counsel's performance requires that every effort be made to eliminate the distorting effects of hindsight, reconstruct the circumstances surrounding the challenged conduct, and evaluate the conduct from counsel's perspective at the time. A court considering a claim of ineffective assistance of counsel must strongly presume that defense counsel's conduct fell within the wide range of reasonable professional assistance; that is, the defendant must overcome the strong presumption that, under the circumstances, counsel's action might be considered sound trial strategy.

"Under the second prong, the defendant must show that defense counsel's deficient performance was prejudicial. To establish prejudice, the defendant must show with reasonable probability that the deficient performance affected the outcome of the proceedings, based on the totality of the evidence. A court hearing a claim of ineffective assistance of counsel must consider the totality of the evidence before the judge or jury. A reasonable probability is a probability sufficient to undermine confidence in the outcome. [Citations omitted.]" *State v. James*, 319 Kan. 178, 184-85, 553 P.3d 308 (2024).

The same principles apply to claims of ineffective assistance of appellate counsel.

"For a defendant to be successful in asserting that he was denied effective assistance of counsel on appeal, it must be shown that (1) counsel's performance, based upon the totality of the circumstances, was deficient in that it fell below an objective standard of reasonableness, and (2) the appellant was prejudiced to the extent that there is a reasonable probability that, but for counsel's deficient performance, the appeal would have been successful." *Baker v. State*, 243 Kan. 1, 7, 755 P.2d 493 (1988).

8

*Roberts Failed to Demonstrate Ineffective Assistance of Counsel*

Roberts raises multiple claims regarding the performance of his trial and appellate counsel. However, as a preliminary matter, he does not brief the claims raised in his motion(s) that:

- trial counsel failed to challenge the probable cause affidavit;
- trial counsel failed to provide him discovery;
- trial counsel failed to request lesser included offense instructions;
- trial counsel was unprepared based on subpoenaing State's witnesses as they left the stand;
- trial counsel failed to secure a ballistics expert;
- trial counsel failed to hire an effective investigator;
- trial counsel failed to call character witnesses;
- trial counsel failed to object to defective jury instructions;
- appellate counsel should have raised a claim of ineffective assistance of counsel; and
- appellate counsel failed to raise viable claims on appeal.

"Issues not briefed are deemed waived or abandoned." *State v. Davis*, 313 Kan. 244, 248, 485 P.3d 174 (2021). Therefore, we will not consider these points.

Turning to the issues raised on appeal, Roberts essentially raises three allegations of ineffective assistance of counsel: (1) conflict of interest; (2) failure to investigate and prepare for trial; and (3) failure to investigate and call witnesses, although his second and third claims are largely intertwined. Roberts spends a considerable portion of his brief arguing the claims in his motion to amend should have been considered by the district

court. The State asks us to assume the motion to amend was properly filed and address the merits of any claims Roberts has not waived on appeal. We will do so here.

*Conflict of Interest*

For the first time on appeal, Roberts seems to incidentally raise a claim his trial counsel had a conflict of interest, although this claim is somewhat confusing because Downing represented Roberts at trial and served as cocounsel on direct appeal. To the extent Roberts intends to frame the issue as a conflict of interest by trial counsel, we will not consider the merits of his argument. A point incidentally raised but not argued is deemed abandoned. *State v. Meggerson*, 312 Kan. 238, 246, 474 P.3d 761 (2020). Further, this was not a point raised before the district court. Under our prudential authority not to consider issues raised for the first time on appeal, we decline to address it. *State v. Mendez*, 319 Kan. 718, 730, 559 P.3d 792 (2024).

Roberts' claim before the district court was that Downing's representation of Michael while Roberts' direct appeal was pending created a conflict of interest. However, Roberts failed to fully explain how this created a conflict. It is hard to follow Roberts' claim because Michael never testified at Roberts' trial and Downing represented Michael in an unrelated case in a different county long after Roberts' jury trial. Moreover, even if we assume it was a conflict, Roberts failed to demonstrate any prejudice as a result. He never explained how the result of his direct appeal would have been different but for Downing's alleged conflict. And he fails to support the allegation on appeal. Instead, he argues an evidentiary hearing was required to determine whether and to what extent any conflict existed or prejudiced him. But as the State points out, any such conflict could only have affected Roberts' direct appeal. To establish prejudice, Roberts need only point out a meritorious argument that was not raised on direct appeal. See *Baker*, 243 Kan. at 7-10. However, he fails to do so. Accordingly, his argument is conclusory.

10

*Trial Preparation*

Roberts collectively addresses his trial counsel's overall trial preparation and decisions regarding whether to investigate and call certain witnesses. Again, he does not brief the issues and, therefore, abandons the claims raised in his motion(s) that trial counsel was unprepared based on subpoenaing State's witnesses as they left the stand; trial counsel failed to secure a ballistics expert; trial counsel failed to hire an effective investigator; and trial counsel failed to call character witnesses. See *Davis*, 313 Kan. at 248.

Roberts argues his trial counsel was ineffective for failing to investigate and call Brown, McMillon, and Ahmad Rayton to testify on his behalf at trial. He argues they would have supported his defense by (1) rebutting the State's theory that he came to Lawrence seeking revenge for the earlier attack on Brown, and (2) supporting his contention he acted in self-defense. Therefore, their testimony would have shown he did not have the intent to kill Henderson, negating the intentional second-degree murder charge, which was the dangerous felony relied on to support the two counts of first-degree felony murder.

However, we observe Roberts did not offer a coherent explanation before the district court. Rather, the extent of his argument on this point was: "Ineffective Assistance of [trial] Counsel for failure to Investigate and Interview Roberts['] co-defendants and Da' Correy Brown who was the State[']s Theory for Roberts and Friends Traveling to Lawrence."

Roberts failed to articulate what the expected testimony would be from Brown, McMillon, or Rayton. He also did not explain or demonstrate they would have been available witnesses at trial. Without citation to the record, Roberts now asserts the district court mistakenly concluded McMillon and Rayton were still awaiting trial. He claims

11

they had already entered pleas prior to Roberts' trial. The record is silent on this point, and Roberts failed to set forth in his motion(s) that McMillon and Rayton were practically or legally available to testify. Roberts further failed to demonstrate Brown would have testified at trial. Brown was subpoenaed as a State's witness but failed to appear at an earlier hearing, resulting in the district court issuing a material witness warrant. Brown was later located in Shawnee County but was not called to testify at trial by the State.

Roberts failed to demonstrate that Brown, McMillon, or Rayton would have testified at his trial, much less what they would have testified to. In his brief, he contends their testimony would have demonstrated Roberts and his friends did not travel to Lawrence seeking revenge for the fight between Richardson and Brown. However, Roberts fails to acknowledge that Marvel Miller testified at trial that Roberts and his friends had not gone to Lawrence because of the earlier fight between Brown and Richardson, and it was Henderson's group who initiated the fight that led to the shooting. Roberts fails to demonstrate or explain how the same or similar testimony from Brown, McMillon, or Rayton would have changed the jury's verdict. Accordingly, the district court properly rejected his claims as conclusory.

Roberts has failed to demonstrate any of the claims he set forth before the district court warranted an evidentiary hearing. Accordingly, we affirm the district court's summary denial of Roberts' K.S.A. 60-1507 motion.

Affirmed.