NOT DESIGNATED FOR PUBLICATION

No. 115,677

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

EDWARD LAMONT ATKINSON,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.


MEMORANDUM OPINION

Appeal from Lyon District Court; JEFFRY J. LARSON, judge. Opinion filed May 19, 2017. Affirmed.

*Paul E. Dean*, of Patton Putnam & Dean LLC, of Emporia, for appellant.

*Amy L. Aranda*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before HILL, P.J., MALONE and GARDNER, JJ.


*Per Curiam*: Edward Lamont Atkinson appeals the district court's denial of his K.S.A. 60-1507 motion for habeas corpus. Atkinson's motion alleged that trial counsel was ineffective, that appellate counsel was ineffective, and that his convictions should be reversed because the complaining witness recanted her testimony. Having reviewed the record, we affirm.

1

*Factual and procedural background*

Atkinson was convicted of rape, two counts of attempted rape, two counts of aggravated criminal sodomy, aggravated indecent liberties with a child, and four counts of contributing to the misconduct of a child. The State charged him with two counts of attempted rape and two counts of aggravated criminal sodomy because Atkinson committed those acts twice, with the same victim, J.B., over a period of about 15 to 20 minutes. In between the two acts of aggravated criminal sodomy, Atkinson left the room briefly.

On direct appeal, his appellate counsel secured the reversal of one of the attempted rape convictions due to multiplicity. Upon our show cause order pursuant to Supreme Court Rule 7.041 (2017 Kan. S. Ct. R. 47), appellate counsel stipulated to the dismissal of the other two issues in the appeal.

Atkinson thereafter filed a K.S.A. 60-1507 motion for habeas corpus, alleging the following: that trial counsel was ineffective, that the district court erred in two of its rulings, that appellate counsel failed to raise all preserved issues on appeal, and that his convictions should be reversed because the complaining witness recanted her testimony. The State moved to dismiss Atkinson's motion.

The district court dismissed most of Atkinson's claims but granted an evidentiary hearing on one issue: whether trial counsel was ineffective for "[f]ailing to consult with the defendant regarding the facts of the case and resting at trial without presenting any evidence of the defendant's theory of defense." The district court granted the evidentiary hearing on that issue because Atkinson had personal knowledge of his own interaction with trial counsel and the court needed to hear trial counsel's testimony regarding his preparation methods for trial and his perspective of his interaction with the movant. After the evidentiary hearing, at which trial counsel and Atkinson agreed their relationship was

2

strained, the district court denied the motion, finding no ineffective assistance of trial counsel.

*Did the district court err in finding, after an evidentiary hearing, that Atkinson failed to show ineffectiveness of trial counsel?*

We first review Atkinson's claim that substantial evidence at the 60-1507 hearing showed his trial counsel was ineffective.

*Standard of review*

When the district court holds an evidentiary hearing on a K.S.A. 60-1507 motion, it is required to make findings of fact and conclusions of law. Supreme Court Rule 183(j) (2017 Kan. S. Ct. R. 222). We must determine whether those factual findings are supported by substantial competent evidence, giving deference to the district court's findings of fact and accepting as true the evidence and any inferences that support or tend to support the district court's findings. *Bellamy v. State*, 285 Kan. 346, 354, 172 P.3d 10 (2007). We then determine whether the findings are sufficient to support the district court's conclusions of law and apply a de novo standard to review its conclusions of law and its decision to grant or deny the 60-1507 motion. The movant bears the burden of proving the grounds for relief by a preponderance of the evidence. Supreme Court Rule 183(g) (2017 Kan. S. Ct. R. 222).

*Claims addressed at the evidentiary hearing*

The district court conducted an evidentiary hearing on Atkinson's claims that trial counsel was ineffective assistance for failing to adequately prepare for trial and for resting without adequately discussing that decision with him or discussing what evidence could be presented.

3

The Sixth Amendment right to counsel is the right to the effective assistance of counsel. The benchmark for judging any claim of ineffectiveness is whether counsel's conduct "'so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.'" *Chamberlain v. State*, 236 Kan. 650, 654, 694 P.2d 468 (1985), adopting *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). Under the *Strickland* test for ineffective assistance of counsel, the defendant must prove that (1) counsel's performance was deficient, and (2) counsel's deficient performance was sufficiently serious to prejudice the defense and deprive the defendant of a fair trial. 236 Kan. at 654.

Judicial scrutiny of counsel's performance must be highly deferential. We must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 687. The defendant bears the burden of demonstrating that trial counsel's alleged deficiencies were not the products of strategy. *Chamberlain*, 236 Kan. at 655. To establish prejudice, the defendant must show a reasonable probability that but for counsel's deficient performance the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome, in light of the totality of the evidence before the judge or jury. *Strickland*, 466 U.S. at 687.

*The amount of time in consulting with Atkinson*

Atkinson first argues that "trial counsel wholly failed to invest sufficient time to adequately prepare himself or the client for trial," citing *Aldrich v. State*, No. 109,236, 2014 WL 1707579 (Kan. App. 2014) (unpublished opinion). Trial counsel acknowledged that he would typically have spent more time on a case of this magnitude. Trial counsel arrived at the jail just 24 minutes before the preliminary hearing and, given the logistics of getting Atkinson to the courthouse, spent even less time consulting with him. Trial counsel's office was over an hour away and he primarily visited Atkinson when he was

4

driving through town. Trial counsel could not find notes of the meetings or discussions at the courthouse. Trial counsel did not show Atkinson the video of the victim's testimony from the preliminary hearing, even though it was his routine practice to do so. Trial counsel maintains that he shared the discovery file with Atkinson, while Atkinson maintains he did not. Atkinson testified that he could have assisted in his defense by helping trial counsel "sort out things" or pick apart the reports.

The record supports the district court's findings that counsel met with Atkinson at least six times "face to face" at the jail and at the courthouse; that trial counsel's investigator also met with Atkinson; and that over the course of the representation, Atkinson was able to specify potential witnesses and suggest means to attack the credibility of the State's witnesses.

We agree that the amount of time trial counsel spent with Atkinson was brief given the severity of the charges. But we focus on whether the brevity likely led to trial errors that prejudiced the outcome of the trial. A lack of preparation time, of itself, is not sufficient to show ineffective assistance of counsel; the defendant must connect it to specific trial errors. See *State v. Cheatham*, 296 Kan. 417, 433-34, 292 P.3d 318 (2013). Atkinson alleges that the lack of time spent with trial counsel hampered his decision making in two ways, which we examine below.

*Prejudice regarding plea bargaining*

First, Atkinson alleges that trial counsel failed to inform him of a plea offer for 50 or 60 months and that, had he known of it, he would have accepted it. The only testimony of a plea offer of that length was from Atkinson's trial counsel, who stated: "At some point, [Atkinson] turned down a plea bargain that was rather good, I thought. I think it was for 50 or 60 months. *It was whatever Goodman came down here in Ms. Aranda's*

5

*place and offered us.*" (Emphasis added.) Trial counsel then reaffirmed that Goodman's plea offer was made the day of trial.

However, Marc Goodman, the prosecutor for Lyon County who replaced Amy Aranda on the case, testified that the State would *never* offer or accept a plea of that length on a case of this nature. Goodman testified that the State offered a different, longer plea on the morning of trial. Although he could not remember its exact terms, he believed the offer was in the range of 174 months. Goodman conveyed the offer the morning of trial, then Atkinson spoke with his then-wife, Nevonna Atkinson, and with trial counsel for about 2 hours before rejecting the plea. It is thus uncontested that Atkinson knew about this plea offer and chose not to accept it.

Based on the facts of record, we do not find substantial evidence that a plea offer was made for 50 or 60 months. Accordingly, we find no prejudice in counsel's not informing Atkinson of such an offer.

*Inadequate consultation about decision to testify/resting without presenting a defense*

Atkinson next contends that trial counsel failed to adequately consult with him about whether he would testify. The testimony Atkinson proffered at the 60-1507 hearing was as to which date the charged acts occurred, but the district court found that further testimony on that subject would not have had a reasonable probability of overcoming the testimony already in the record from several witnesses. We address this conclusion more specifically later, in reviewing Atkinson's alibi argument, which also is premised on the date disparity. We conclude that Atkinson has not shown that he could have offered any testimony with a reasonable probability of exonerating him.

6

Atkinson also argues that counsel rested without allowing him to testify and without his consent. At the end of the State's case, the judge asked trial counsel if he would be presenting a case or presenting an opening statement. Trial counsel asked for "just a minute." Trial counsel testified he then consulted with Atkinson. The record contains no objection by Atkinson to the plan of resting without testifying. Trial counsel testified he would never rest without the client's consent.

Trial counsel testified that he advised Atkinson that he could decide whether to testify, whether to accept a plea bargain, and whether he wanted a jury trial or bench trial. Trial counsel testified that, prior to trial, he was not sure whether Atkinson would testify. Atkinson turned down a plea offer on the morning of trial, after 2 hours of consultation and deliberation. Trial counsel testified that he talked with Atkinson at that time and told him that if he was insistent on his day in court, this was his opportunity to talk to the jury.

The record shows a conflict in the testimony between Atkinson and trial counsel, but this testimony was presented to the trial court in the evidentiary hearing and it is not our role to judge credibility or reweigh the evidence. See *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016). We find the district court's factual findings are supported by substantial competent evidence, and Atkinson has not shown that but for trial counsel's allegedly deficient performance, there was a reasonable probability the result would have been different.

*Did the district court err in summarily dismissing the other claims of ineffective assistance of trial counsel?*

We now review the claims that the district court dismissed without an evidentiary hearing, first examining those relating to trial counsel.

7

*Standard of review*

When the district court summarily dismisses a K.S.A. 60-1507 motion, the appellate court owes no deference to the district court's factual findings, because the appellate court has the same access to the motion, records, and files as did the district court. *Bellamy*, 285 Kan. at 354. Thus, our standard of review for the summary dismissal of 60-1507 motions is de novo. 285 Kan. at 354.

The district court found that Atkinson failed to meet his burden of proving that the remaining issues in his 60-1507 motion warranted an evidentiary hearing. See *Swenson v. State*, 284 Kan. 931, 938, 169 P.3d 298 (2007). A hearing, preliminary or evidentiary, must be granted "[u]nless the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief." K.S.A. 2016 Supp. 60-1507(b). However, an evidentiary hearing is not required if no substantial issue of fact is presented by the motion. *Rhone v. State*, 211 Kan. 206, 208, 505 P.2d 673 (1973). Mere conclusory contentions are not enough to establish a substantial issue of fact. *Burns v. State*, 215 Kan. 497, 500, 524 P.2d 737 (1974).

Because these claims were not the subject of the evidentiary hearing, we owe no deference to the district court's findings of fact. We determine from the record whether Atkinson's motion raised a substantial issue of fact that, if true, would allow him to prove both that counsel's conduct fell below a reasonable standard and that counsel's performance prejudiced his defense.

*Atkinson alleges three failures of trial counsel*

Atkinson argues that his trial counsel was ineffective because trial counsel (1) failed to investigate three alibi witnesses; (2) failed to investigate potential alibi information from his probation officers; (3) failed to obtain *Gregg* material and to call

witnesses to discredit the complaining witness. We discuss issues (1) and (2) together below.

*Failure to investigate the alibi witnesses, including the probation officers*

Atkinson identified Larry and Jenny Chapman and Nevonna Atkinson as potential alibi witnesses. But the decision whether to call witnesses is a strategic decision left to counsel. See *Flynn v. State*, 281 Kan. 1154, 1163, 136 P.3d 909 (2006).

Trial counsel and his investigator met with Nevonna at her home, and interviewed her, but decided it was not advantageous to call her as a witness. Trial counsel testified that he talked a lot with Atkinson about the alibi defense, that he told Atkinson he did not think his alibi witnesses provided him an alibi for the time the victim said he assaulted her, that he was not sure if there was ever any big disagreement about it, that the alibi discussion was ongoing, and that Atkinson eventually accepted and assented to not presenting an alibi or other defense.

In support of Atkinson's K.S.A. 60-1507 motion, Nevonna submitted an affidavit stating that Atkinson was at home with her "on New Year's Eve, December 31, 2011, and on New Year's Day, January 1, 2012." But the affidavit did not specifically aver that she was with Atkinson during the evening or night of New Year's Day, which is when the victim said the crimes occurred.

Trial counsel did not contact the Chapmans. The district court acknowledged that it "would have been the better practice" for trial counsel to talk with the proposed alibi witnesses. We agree. But Atkinson does not indicate what the Chapmans could have testified to. The only mention of their potential testimony is in Nevonna's affidavit, which says she heard them say they would have testified as to Atkinson's whereabouts and activities on "the dates of the alleged offenses."

9

Nor did trial counsel contact Atkinson's probation officers, Meaghan Broyles and Brad Douglas. Atkinson said they performed curfew checks on him at 11 p.m. at his home on New Year's Eve.

Atkinson's alibi witnesses would thus have testified as to Atkinson's whereabouts on New Year's Eve, a Saturday. Atkinson asserts this was the date of the crimes in question, but in support of that assertion he points only to the following testimony by the victim:

"Q. Now, do you remember the New Year's—first of the year, 2012, this year?
"A. Yes.
"Q. And can you tell us, did you—you were on school break—
"A. Yes.
"Q. —or Christmas break at that time, correct?
"Q. Yes.
"Q. Did you see Tyrisha during that Christmas break period?
"A. Well, I didn't hang out with her until New Year's Eve."

Atkinson omits the victim's testimony immediately following, clarifying that the crimes occurred on a Sunday night, which was January 1st:

"Q. Okay. Was it New Year's Eve or New Year's Day or about what time?
"A. About 8:30 on a Sunday night.
"Q. Okay. On a Sunday night?
"A. Yeah, I don't remember the day.
"Q. Okay. You don't know what, like, number of the month it was—
"A. Yeah.
"Q. —or what day of the week it was?
"A. What number of the month it was.
"Q. Okay. But you know it was a Sunday night?
"A. Yes.
"Q. Okay. And that's the first and only time you saw her during that break?

10

"A. Yes.

"Q. Okay. If I showed you a calendar that indicated that Sunday was January 1st, 2012, does that sound right?

"A. Yes.

"Q. Okay. And how do you know that you saw Tyrisha on Sunday night?

"A. Because the next day I had called my mom to come pick me up because I had to do my newspaper route on Monday.

"Q. And so you have a newspaper route—

"A. I had.

"Q.—at that time?

"A. Yeah.

"Q. Okay. So, on Sunday, January 1st then, tell me . . . ."

Testimony established that the victim got permission to spend that night with Tyrisha, and Atkinson and Tyrisha came to pick her up at 8:30 p.m. that evening. On cross-examination, the victim confirmed the date as a Sunday.

"Q. You're not sure exactly what night this happened, are you?

"A. I know that it was a Sunday because the next day I had to go do my newspaper route, but I don't know the number of the day.

"Q. You don't know which Sunday, do you?

"A. No.

"Q. Could have been several Sundays, couldn't it?

"A. Yes.

"Q. So you can't tell the jury that it happened on a particular day, can you?

"A. No."

Because of the date discrepancies, the jury instructions required the jury to find that the charged acts occurred "on or about the 31st day of December, 2011, or the 1st day of January, 2012."

11

The district court concluded that trial counsel's failure to investigate alibi witnesses was not prejudicial for three reasons. First, the witnesses could account for Atkinson's whereabouts only on New Year's Eve, a Saturday, but the weight of the testimony placed the date of the offenses on the following night on New Year's Day, a Sunday. Because the alibi witnesses could have testified as to only one of the dates specified in the jury instructions, their testimony would not have exonerated Atkinson.

Second, the district court found that two other witnesses, who knew Atkinson before the charged offenses occurred, placed him at the cabin in question on New Year's night, a Sunday, as had the victim. Karen Molina, who lived in a nearby cabin, testified that Atkinson was there between the 1st and the 5th of January, 2012. Christopher Wilburn, who had worked with the defendant, testified that Atkinson came over to his cabin with Tyrisha and another young girl on the evening of January 1, 2012. Wilburn said he later left with Tyrisha, leaving Atkinson in the cabin with the young girl. Neither of these witnesses was shown to have had any motive to fabricate his or her testimony which placed Atkinson in the cabins on New Year's night. The district court found no prejudice based on the lack of specific evidence supporting Atkinson's alibi claim combined with the specific and unrefuted eyewitness testimony of Molina and Wilburn, which placed Atkinson at the scene of the crimes on Sunday, New Year's night.

Third, the district court found that calling the suggested alibi witnesses could actually have implicated Atkinson in the crime, instead of absolving him from it, as his trial counsel anticipated:

> "The witnesses were either unable to cover the pertinent time frame that need[ed] to be covered or worse, cross examination could lead to testimony placing Atkinson at the scene where the events occurred at the time they were alleged by the state. For example, the state would have been able to impeach Nevonna with emails she sent to the victim accusing the victim of having sex with Atkinson."

12

Trial counsel's testimony established that he had the report of Detective Sage's interview with Nevonna, which not only contradicted her alibi but actually placed Atkinson at the location with the victim and Tyrisha. Nevonna admitted to Sage that she had sent text messages to the victim after the fact, accusing her of having had sex with Atkinson. Trial counsel testified that he had read that part of the report to Atkinson and Nevonna before trial and had discussed why Nevonna would not be an advantageous witness. Trial counsel considered her testimony to be "devastating" because she not only seemed to place Atkinson with the victim at the time charged, but she acknowledged that the two of them had sex.

Given these facts of record, we agree that Atkinson's motion did not raise a substantial issue of fact warranting an evidentiary hearing. The transcripts from trial and the evidentiary hearing which was held, the filings, and the 60-1507 motion show that Atkinson was not entitled to relief. We find no reasonable probability that, but for counsel's failure to investigate and put on this alibi evidence, the result of the trial would have been different.

### *Failure to obtain* Gregg *material*

Atkinson next argues he should have been granted an evidentiary hearing on whether trial counsel's failure to obtain *Gregg* material to discredit J.B.'s testimony amounted to ineffective assistance. See *State v. Gregg*, 226 Kan. 481, 489, 602 P.2d 85 (1979). This claim fails on both prongs of the *Strickland* test.

The record shows that at the conclusion of the State's case, trial counsel renewed his request for *Gregg* material. The State advised the court that, pursuant to the court's previous order, the State had previously asked for such information and had advised defense counsel that it did not have or know about any prior reports of sexual abuse made by the victim nor any mental health services she had received prior to this offense.

13

Atkinson argues trial counsel should have gone beyond merely requesting *Gregg* information from the State and attempted to obtain it directly via a subpoena or by interviewing J.B. But trial counsel had obtained a court order for the State to produce any such material and had no duty to do more. The State responded that none existed, that the State had no knowledge of any mental health or drug counseling records for J.B., and that it was not aware of J.B. having made any prior false allegations of sex crimes.

There was little more trial counsel could have done to obtain *Gregg* material. He could not have obtained a court order for a psychiatric exam under these facts because he could not establish a compelling reason for such examination. A psychiatric examination will not be ordered if it appears the defendant is merely on a "fishing expedition" for ways to discredit a complaining witness. 226 Kan. at 490. We conclude that counsel's performance was not deficient, as he took reasonable steps to pursue this line of defense.

Moreover, Atkinson cannot establish that he was prejudiced by lack of further effort by trial counsel in this matter. Atkinson wanted to present evidence that J.B. was on probation and had used drugs. But the drug evidence would have been duplicative because J.B. admitted in her trial testimony that she was using methamphetamine the night of the events; thus, the jury was aware of her drug use. Atkinson did not raise a substantial issue of fact warranting a hearing. Instead, the record conclusively shows he was not entitled to relief since he has shown no "but-for" prejudice to his defense.

We conclude that the district court did not err in refusing to grant an evidentiary hearing on the above allegations of ineffective assistance of trial counsel.

*Did Atkinson raise an issue of law or fact entitling him to a hearing on his claim of ineffective assistance of appellate counsel?*

We next address Atkinson's claims that his appellate counsel was ineffective.

14

A criminal defendant is entitled under due process to effective assistance of counsel in his first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 396-98, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985). We apply the same *Strickland* test noted above to claims of ineffective assistance of appellate counsel. *Baker v. State*, 243 Kan. 1, 7, 755 P.2d 493 (1988).

Atkinson argues that he was entitled to an evidentiary hearing on his claim that appellate counsel was ineffective for the following reasons:  stipulating to our showcause order, failing to petition the Kansas Supreme Court for review, and failing to raise all appealable issues, including the issues of multiplicity of all of the sex offense counts and admission of hearsay.

*Disposition of the issues raised on direct appeal*

Appellate counsel argued three issues on direct appeal:  (1) The trial court's use of an older version of PIK Crim. 3d 52.02 violated his right to a jury verdict of guilty beyond a reasonable doubt as to each element of the crimes; (2) the sentencing court's use of his criminal history in sentencing violated his rights under *Apprendi*; and (3) the two counts of attempted rape were multiplicitous.

On direct appeal, this court ordered the parties to show cause why one of the convictions for attempted rape should not be vacated and why issues (1) and (2) should not be summarily affirmed under the Kansas Supreme Court holdings in *State v. Herbel*, 296 Kan. 1101, 299 P.3d 292 (2013), and *State v. Ivory*, 273 Kan. 44, 41 P.3d 292 (2002), respectively. Appellate counsel responded that she knew of no reason that we should not summarily affirm as to issues (1) and (2) under the controlling law, and the State conceded that the two counts of attempted rape were multiplicitous.

We find no merit to Atkinson's contention that stipulating to the dismissal and then refusing to petition the Kansas Supreme Court for review amounted to ineffective

15

assistance of appellate counsel. Under the Kansas Rules of Professional Conduct, acceding to the show cause order was the only ethical course appellate counsel could have taken, given the clear applicability of the controlling law cited in the show cause order. Likewise, appellate counsel was ethically bound not to petition the Kansas Supreme Court for review. KRPC 3.1, Cmt. 1 (2017 Kan. S. Ct. R. 341) (lawyers are required to determine that they can make good faith arguments in support of their clients' positions before presenting them). Therefore, no ineffective assistance claim can lie for appellate counsel's stipulation to the showcause order.

*Failure to raise the issues of multiplicity of other counts*

Atkinson also argues that appellate counsel was ineffective because she did not argue the multiplicity of counts other than the two counts of attempted rape. Appellate counsel was undoubtedly effective in selecting the multiplicity issue she did raise, as the State conceded that Counts 2 and 7 were multiplicitous; thus, Atkinson's conviction on one count of attempted rape was vacated. This illustrates counsel's exercise of good professional judgment in issue selection.

Appellate counsel are not required to include every issue the defendant wants to raise. *Baker*, 243 Kan. at 7. Instead, they should carefully consider the potential issues and not include issues that are weak or without merit or which would result in mere harmless error. "'This process of "winnowing out weaker arguments on appeal and focusing on" those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy. *Jones v. Barnes,* 463 U.S. 745, 751-52, 77 L. Ed. 2d 987, 103 S. Ct. 3308 (1983).'" *Smith v. Murray*, 477 U.S. 527, 536, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986); see *Baker*, 243 Kan. at 7.

The potential argument for multiplicity among the remaining counts was weak, as Atkinson acknowledges, given the clear precedent in *State v. Sellers*, 292 Kan. 117, 128-

16

31, 253 P.3d 20, *modified* 292 Kan. 346 (2011), *overruled on other grounds by State v. Dunn*, 304 Kan. 773, 375 P.3d 332 (2016). Highly summarized, *Sellers* held that when a fresh impulse motivates a defendant to engage in a sexual act after having engaged in a prior sexual act, the conduct is not unitary, so separate charges are not multiplicitous. Because the facts in *Sellers* are strikingly similar in relevant aspects to those in this case, counsel was hard pressed to challenge the district court's denial of Atkinson's motion to dismiss other counts as multiplicitous. Accordingly, it was well within reasonable professional judgment for appellate counsel to not raise the issue on appeal.

*Failure to raise the hearsay issue*

Atkinson also alleges that appellate counsel was ineffective because she did not appeal the trial court's admission of hearsay of statements allegedly made by Kayla Heins, who lived in the cabin where the incident occurred.

The trial court allowed Chris Wilburn, who lived with his girlfriend, Heins, at the cabin where the crimes occurred, to testify as to statements Heins made on the night of the events. Heins was not available to testify because she died shortly after the events occurred. The trial court admitted the hearsay statements as "excited utterances" under K.S.A. 2016 Supp. 60-460(d)(2) because Wilburn testified that Heins was frantic and upset at the time, and she told him she wanted Atkinson out of their house because Atkinson had been in the bathroom involved in sexual conduct with J.B.. Wilburn testified that Heins had yelled at Atkinson to come out of the bathroom because she had learned J.B. was a minor. The record establishes that Atkinson left the bathroom for approximately 2 minutes due to Heins' yelling, then returned to the bathroom and resumed his criminal acts.

17

Whether Atkinson left the room was critical to his convictions for two counts of aggravated criminal sodomy. But Heins' statement was not the only evidence of the fact, as the victim also testified that Atkinson left the room between the two acts of sodomy.

Atkinson did not raise a substantial issue of fact on these points to require an evidentiary hearing. The determinative facts were in the trial testimony and the courts' rulings. The trial court admitted the statements as excited utterances and as being from an unavailable declarant. K.S.A. 2016 Supp. 60-460(d)(2), (d)(3). Atkinson has not identified any caselaw challenging those legal conclusions, and we see no error in them. We thus find appellate counsel's performance was not deficient for failing to raise the hearsay argument on appeal. Moreover, Atkinson has failed to establish that he was prejudiced by appellate counsel's decision to not raise this issue on appeal because he cannot show any reasonable probability that it would have prevailed.

Atkinson also contends, apart from his ineffective assistance of counsel argument, that the district court erred in not dismissing Counts 1-4 and 7 as multiplicitous, and in permitting the hearsay testimony of Heins. For the reasons included in our discussion above, we find no error by the district court.

*Did the district court err in summarily dismissing Atkinson's claim that the complaining witness recanted her trial testimony?*

Atkinson next argues that the district court should have granted him an evidentiary hearing on his assertion that J.B. was recanting her testimony. Atkinson filed a document stating that "the alleged victim is recanting her testimony and will allege that the same was coerced. That this has been reported by the victim to Jennifer Riley." He does not identify Jennifer Riley, explain her relationship to the case, or attach an affidavit from either the victim or Riley.

The district court found that Atkinson failed to provide "any information stating specifically what statements the victim is prepared to recant" or explain Riley's alleged knowledge of the victim's intent to recant. The district court found the allegations conclusory and insufficient to warrant an evidentiary hearing. We agree.

Atkinson's failure to produce an affidavit from J.B. is fatal to his claim. Our cases which have required an evidentiary hearing on a claim of recanted testimony have been supported by an affidavit from the recanting witness. See, *e.g.*, *Neer v. State*, No. 111,230, 2015 WL 1310815 (Kan. App. 2015) (unpublished opinion); *Bullock v. State*, No. 94,717, 2006 WL 1816400 (Kan. App. 2006) (unpublished opinion); see also *Davis v. State*, No. 110, 387, 2014 WL 1302636, at *5 (Kan. App. 2014) (no hearing required where affidavit was from a witness with convictions for dishonesty), *rev. denied* 301 Kan. 1045 (2015). Mere conclusory contentions are not enough to establish a substantial issue of fact. *Burns v. State*, 215 Kan. 497, 500, 524 P.2d 737 (1974).

Affirmed.