IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 113,705

STATE OF KANSAS,
*Appellee*,

v.

BROOKE DANIELLE DINKEL,
*Appellant*.

SYLLABUS BY THE COURT

1.

As part of a lawyer's investigative duty, defense counsel is charged with knowledge of statutes relevant to the case.

2.

Defense counsel's failure to fulfill a lawyer's duty through reasonable investigation of the law and facts undermines the adversarial process central to a defendant's right to a fair trial.

3.

There is no mental culpability requirement for the crime of rape of a child under 14 years of age.

Review of the judgment of the Court of Appeals in an unpublished opinion filed March 23, 2018. Appeal from Saline District Court; PATRICK H. THOMPSON, judge. Opinion filed September 24, 2021. Judgment of the Court of Appeals affirming the district court is affirmed in part and vacated in part. Judgment of the district court is reversed, and the case is remanded to the district court with directions.

*Richard Ney*, of Ney, Adams & Miller, of Wichita, argued the cause, and *David L. Miller*, of the same firm, was with him on the briefs for appellant.

*Richard E. James*, assistant county attorney, and *Amy E. Norton*, assistant county attorney, argued the cause, and *Derek Schmidt,* attorney general, was with them on the briefs for appellee.

ROSEN, J.: In 2014, a jury convicted Dinkel of two counts of rape of a child under 14 years of age. The Court of Appeals affirmed her convictions. We reversed the panel's holding that Dinkel's claim K.H. forcefully raped her was legally irrelevant. Because this was pertinent to whether the State established Dinkel's conduct was voluntary, it was relevant to Dinkel's defense. We withheld judgment on Dinkel's additional claims of error, retained jurisdiction, and remanded the case to the district court for a hearing on whether defense counsel had been ineffective for failing to argue that the State never proved Dinkel committed a voluntary act. The district court concluded that defense counsel had not been ineffective, and the case returned to this court.

FACTUAL AND PROCEDURAL HISTORY

In our first opinion in this case, we set out the relevant facts. Highly condensed, they are as follows: Dinkel was a middle school counselor whom the State charged with 10 counts of rape of a child under 14 years of age, and 10 counts of criminal sodomy for allegedly engaging in sex acts with K.H., a student at the school where Dinkel worked. Dinkel offered three defenses at trial: (1) K.H. physically forced the first sexual encounter; and (2) any sexual contact thereafter was a result of K.H. blackmailing Dinkel; or (3) Dinkel's mental disease or defect. A jury convicted Dinkel of 2 counts of rape of a child under 14 years of age, and acquitted her of the remaining 18 charges. Dinkel presented a variety of issues on appeal, and the Court of Appeals remanded the case for a *Van Cleave* hearing on Dinkel's many ineffective assistance of counsel claims. The district court concluded Dinkel had failed to establish ineffective assistance of

2

counsel. Back on appeal, the Court of Appeals affirmed the district court and rejected all of Dinkel's remaining claims. *State v. Dinkel*, No. 113,705, 2018 WL 1439992 (Kan. App. 2018) (unpublished opinion). The panel's decisions were based largely on its sua sponte consideration of the required mental state of rape of a child and its conclusion that the defendant's intent is irrelevant to the commission of that crime. In a petition for review, Dinkel contested all of the panel's conclusions.

On June 12, 2020, we issued an opinion reversing the panel's blanket holding that Dinkel's intent was irrelevant in this case. *State v. Dinkel*, 311 Kan. 553, 558-61, 465 P.3d 166 (2020) (*Dinkel I*). We clarified that every crime requires a voluntary act as part of the actus reus, and "any evidence K.H. physically forced the sexual intercourse and Dinkel did not intend any of the bodily movements that resulted in the sexual intercourse with K.H." would negate a showing that Dinkel committed a voluntary act. *Dinkel I*, 311 Kan. at 560. We did not consider any of the panel's other conclusions. Instead, we retained jurisdiction and remanded the case to the district court for another *Van Cleave* hearing, this time on whether defense counsel was ineffective for failing to argue that the State never established that Dinkel committed a voluntary act.

After hearing testimony and arguments, the district court concluded trial counsel had not been ineffective. Because we retained jurisdiction, the case returned to us, and we now consider the district court's conclusion alongside the claims of error in Dinkel's petition for review.

ANALYSIS

*Defense counsel was ineffective for failing to include a defense that stressed the voluntary act requirement.*

3

"The Sixth Amendment to the United States Constitution guarantees the right to effective assistance of counsel." *Balbirnie v. State*, 311 Kan. 893, 897, 468 P.3d 334 (2020). If trial counsel fails to provide effective assistance, a defendant may be entitled to a new trial. In evaluating a claim of ineffective assistance, courts apply a two-step test. First, they consider whether the defendant has shown that "'counsel's representation fell below an objective standard of reasonableness.'" *Balbirnie*, 311 Kan. at 897 (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]). If the defendant succeeds in making this showing, the next step requires the defendant show "the deficient performance prejudiced the defense." *Balbirnie*, 311 Kan. at 897. In considering this question,

> "'[j]udicial scrutiny of counsel's performance must be highly deferential, and a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. A court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Fuller v. State*, 303 Kan. 478, 488, 363 P.3d 373 (2015) (quoting *State v. Betancourt*, 301 Kan. 282, 306, 342 P.3d 916 [2015]).

We use a mixed standard of review to assess a district court's conclusions regarding ineffective assistance of counsel. We consider whether substantial competent evidence supports the court's factual findings and review the court's conclusions of law de novo. *Balbirnie*, 311 Kan. at 897-98.

In our first opinion, we instructed the district court to consider one question on remand: Was defense counsel ineffective for failing to pursue an argument that the State never established the voluntary act requirement? 311 Kan. at 561-62. Roger Struble, Dinkel's trial counsel, was the only witness at the hearing on remand. The district court found that Struble argued throughout the trial Dinkel was raped and blackmailed, that he

4

presented evidence to support that argument, that he asked the court for instructions on the elements of rape and blackmail, and that he filed a motion for acquittal that asserted Dinkel should be acquitted because she did not have the requisite intent for the charged crimes and acknowledged that the jury "was not so instructed."

Based on these findings, the court concluded Struble had not performed deficiently. The court reasoned "the lack of voluntary action by the defendant r[an] throughout the[] arguments," "the defense's requested jury instructions were consistent with this Court's experience in jury trials," and "[t]his court has never had a defense attorney request specific jury instructions outside the standard PIK instructions to distinguish the actus reus and the statutory culpable mental state or to specifically instruct the jury that the State must prove the defendant engaged in a voluntary act."

Before us, Dinkel acknowledges Struble argued throughout the trial that K.H. raped her and blackmailed her into having sex and requested instructions on the elements of rape and blackmail. But she contends this is not the same as arguing "the voluntariness issue to the jury" and requesting an instruction on the actus reus. We agree.

It is true Struble presented Dinkel's version of the events to the jury. But nothing in his arguments or the instructions told the jury how it could *use* these defenses. The jury was instructed to apply the law that the court gave it. That law provided that Dinkel was guilty of rape if sexual intercourse occurred at certain times, Dinkel knowingly engaged in the act, and K.H. was under 14 years old. It instructed the jury that Dinkel acted knowingly if she was aware of the nature of her conduct. The State proved that sexual intercourse occurred at least once during the described time period, that Dinkel was aware of what was happening, and that K.H. was under 14 years old. Even if the jury believed Dinkel's defenses, the instructions offered no avenue for the jury to find she was not guilty. Thus, regardless of how aggressively or completely Struble presented Dinkel's

5

claims, without any argument or instruction on the State's burden to prove that Dinkel's acts had to be voluntary, her claims were legally irrelevant.

In arguing Struble was deficient, Dinkel focuses on Struble's failure to request or provide the court a jury instruction explaining how her defenses were relevant to the State's burden. While this was surely a problem, it was a result of an earlier misstep—Struble never crafted a workable defense. He theorized that Dinkel was not guilty because she was raped and blackmailed, but it seems he rested this theory on a gut feeling and thus pursed a defense strategy that equated to jury nullification. In closing, Struble argued:

> "Brooke Dinkel was the victim on the 26th. We'll have a little dispute here that you're going to have to solve because what I'm telling you is, it's only common sense that a person who is under the age of 14 can rape an older person.

> "If not, a person under the age of 14 could go out and forcefully attack women up to the age of 50, apparently, or older, and do so with impunity.

> "And, in fact, any victim that he creates is going to be charged by the State as having raped them, because the elements are different, the elements being you don't need to know their age, you just have to have sex with them. And you're too young to consent. That just doesn't make sense.

> "What I'm submitting to you, ladies and gentlemen, that's the act that occurred. She is not guilty.

> . . . .

> "If you believe there are circumstances, even though they've proven elements, the instruction says you should find her guilty. It doesn't say you have to.

> "And I'm asking you to find her not guilty."

These assertions did not provide the legal link between Dinkel's claims and possible acquittal that Dinkel asserted. In fact, we question how Struble's argument did anything but inject confusion into the jury's decision-making. When reading the instructions, the trial judge told the jury that its "verdict must be founded entirely upon the evidence admitted *and the law as given in these instructions*." (Emphasis added.) As we have noted, nothing in those instructions allowed the jury to find Dinkel not guilty if it believed her version of events. So a statement telling the jury that it did not have to find Dinkel guilty because that "didn't make sense" was bound to muddy up the deliberative waters.

It appears Struble did not know the voluntary act requirement existed or, if he did, he overlooked it. But this does not excuse his missteps. In *State v. Davis*, this court held that counsel's performance had been deficient when "he was unaware of the proper legal standard for a defense of mental disease or defect" and, consequently, "did not adequately prepare for trial." 277 Kan. 309, 327, 85 P.3d 1164 (2004). Similarly, here, Struble neglected the voluntary act requirement and, consequently, forged ahead with a defense that held no legal significance.

We recognize that neither this court nor the Court of Appeals have addressed the voluntary act requirement's application to the crime of rape of a child when the defendant alleges he or she was the victim. So we do not suggest that Struble missed a swath of caselaw that would have led him to the appropriate defense. But we did not change or create new law with our first opinion in this case. The voluntary act requirement is part of the Kansas Criminal Code and applicable to all Kansas crimes. It may not be routinely argued, but that does not make it reasonable for an attorney to neglect its importance—especially when it provides the only connection between the defense and acquittal. This case may have been novel, but the uniqueness of the factual scenario should have alerted

7

Struble to the reality that the law and the instructions might be different than they are in most other child rape cases. And if the novelty of the facts did not tip him off, the reality that Struble was offering the jury no avenue to use Dinkel's proffered defense should have steered him toward the voluntary act requirement. In fact, Struble appeared to eventually become aware of this issue. In his post-trial motion arguing for acquittal, he seemed to acknowledge the problem when he noted that the jury was never instructed "as to what the actual effect" her defenses would have. This shows that the problem was identifiable, and identifiable by Struble.

Neither party—and none of the presiding judges—mentioned the voluntary act requirement until Dinkel pointed it out it in her petition for review. While this may have convinced the district court that reasonable attorneys would not have pursued a defense that involved the voluntary act requirement, we cannot accept that supposition in this case. Struble represented Dinkel at trial where she admitted—on the witness stand—the elements of the charged crime. Struble's legal defense to that admission was a mere assertion that Dinkel could not be guilty because Dinkel was a victim herself and this "just doesn't make sense."

A reasonable investigation should have revealed the legal basis for the voluntary act defense and corollary jury instruction in this case. A criminal defense lawyer "'is obligated to research relevant law to make an informed decision whether certain avenues will prove fruitful.'" *Heard v. Addison*, 728 F.3d 1170, 1179 (10th Cir. 2013). As part of this investigative duty, counsel is charged with knowledge of K.S.A. 2020 Supp. 21-5201 and the defenses available under this statute. See *Phelps v. State*, No. 07-10-00443-CR, 2011 WL 2582810, at *4 (Tex. App. 2011) (unpublished opinion) ("That trial counsel is charged with knowledge of the applicable law is beyond question."); see also *Magana v. Hofbauer*, 263 F.3d 542, 550 (6th Cir. 2001) (holding counsel's "complete ignorance of the relevant law under which his client was charged" fell below the objective standard of

8

reasonableness); *Washington v. Hofbauer*, 228 F.3d 689, 702 (6th Cir. 2000) (counsel's failure to object to prosecutorial misconduct may constitute deficient performance where such failure is due to "lack of knowledge of controlling law, rather than reasonable trial strategy"); *United States v. Bankston*, 820 F.3d 215, 234 (6th Cir. 2016). In turn, the plain language of K.S.A. 2020 Supp. 21-5201 set forth the legal basis for advancing the voluntary act defense and instructing the jury on the viability of this defense under the facts of the case.

Given the circumstances, we cannot condone Struble's performance as effective assistance of counsel. As advocates, lawyers have the privilege and the power of taking their clients' legal lives into their hands. Indeed, "counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled." *Strickland*, 466 U.S. at 685. To fulfill constitutional requirements, counsel "has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process." 466 U.S. at 688. Failure to fulfill this duty through reasonable investigation of the law and facts undermines the adversarial process central to a defendant's right to a fair trial. *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986) (recognizing adversarial testing process generally will not function properly unless defense counsel has conducted reasonable investigation). And as judges, we have the privilege and the power of ensuring the standard by which we assess whether a lawyer tends to this responsibility effectively satisfies constitutional requirements. We do not suggest that Struble is a bad lawyer or that he did not try to advocate zealously for Dinkel. We conclude he missed something that reasonable investigations should have disclosed. This will happen. Lawyers will miss things; judges will miss things. But our litigants' lives should not suffer because of our oversight. We conclude Struble offered a deficient performance when his investigation

9

failed to reveal the plain language of K.S.A. 2012 Supp. 21-5201, which provided legal force to Dinkel's assertion that she was not guilty.

To this discussion we add one clarifying note. At the *Van Cleave* hearing, Dinkel's counsel argued that Struble's failure to argue to the jury that forced sexual intercourse *and* blackmail negated the voluntary act requirement constituted deficient performance. While we agree that Dinkel's forcible rape defense was relevant to the voluntary act requirement, the arguments in this case have not convinced us that blackmail is similarly relevant. Criminal law has traditionally defined the voluntary act requirement in very narrow terms, and we are not persuaded today that blackmail would negate such an act. See Christopher & Christopher, *The Paradox of Statutory Rape*, 87 Ind. L.J. 505, 519 (2012) ("Much conduct ordinarily termed involuntary is construed as voluntary for purposes of the actus reus requirement. A voluntary act is conventionally defined as a willed bodily movement, or a willed muscular contraction or conduct 'within the control of the actor.'"). Consequently, Struble's failure to connect Dinkel's blackmail defense to the voluntary act requirement did not contribute to his deficient performance. See *Kahlil-Alsalaami v. State*, 313 Kan. 472, 498-99, 486 P.3d 1216 (2021) (counsel's failure to pursue legal strategy can only be ineffective if it would have been meritorious).

Struble's general failure, however, to craft a defense that engaged the voluntary act requirement was deficient because it left the jury with no way to apply Dinkel's forcible rape defense. We move on to consider whether this deficiency prejudiced Dinkel. We conclude that it did. In *Strickland*, 466 U.S. at 696, the United States Supreme Court discussed this prong of an ineffective assistance of counsel analysis. It wrote:

> "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged. In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular

proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results." *Strickland*, 466 U.S. at 696.

The failure to give the jury the tools it needed to apply Dinkel's defense against the State's case made it impossible to achieve the fundamental fairness we expect in a criminal trial. The instructions told the jury the State had to prove Dinkel knowingly engaged—meaning she was aware of her conduct—in sexual intercourse with K.H. between November and March while K.H. was less than 14 years old. Dinkel admitted to at least one instance of sexual intercourse with K.H. during this time. She also testified that K.H. forcibly raped her during their first sexual encounter while she just "lied there" and presented evidence to support this claim. But no instruction told the jury that Dinkel was not guilty if she was forcibly raped. Because we generally presume juries follow instructions, *State v. Race*, 293 Kan. 69, 77, 259 P.3d 707 (2011), the absence of an instruction permitting the jury to apply Dinkel's defense was prejudicial. Without it, Dinkel's testimony secured her conviction for at least one of the charges.

Had defense counsel explained to the jury in argument how it could use Dinkel's defenses to negate the State's evidence, it might have lessened the prejudicial impact of the instruction omission. But he did not. Instead, he alluded to jury nullification. Again, because we presume juries follow instructions, this was not helpful to Dinkel.

We might also be able to conclude there was no prejudice here if the jury's verdict could somehow show that the jury applied Dinkel's defenses even though it was never instructed to do so. But the jury's verdict is unrevealing, so we decline to use this instance to start speculating about what the jury applied or did not.

We conclude that Struble's deficient performance resulted in a "breakdown in the adversarial process" and that, without this breakdown, the result would likely have been different. *Strickland*, 466 U.S. at 696. Struble's deficient performance prejudiced Dinkel's

11

defense. Consequently, we reverse Dinkel's convictions and remand the case for a new trial.

With this conclusion, Dinkel's claims of trial error become moot. Consequently, we vacate the Court of Appeals decisions on those claims of error. But the Court of Appeals also made one resounding legal conclusion that was never considered below: whether the crime of rape of a child has a culpable mental state. We move to that issue before concluding.

*Mental culpability requirements of rape of a child*

As we noted in *Dinkel I*, early in its review of Dinkel's appeal, the Court of Appeals "concluded that rape of a child requires no culpable mental state." 311 Kan. at 556. It relied on this conclusion to hold that Dinkel's claim of forcible rape, mental disease or defect, and blackmail were legally irrelevant. In *Dinkel I*, we held that regardless of whether rape of a child has a mental culpability requirement, evidence that K.H. physically forced the sexual encounter was relevant because it could negate the voluntary act requirement. 311 Kan. at 560-61. With that resolved, we now consider the panel's underlying conclusion that rape of a child has no mental culpability requirement.

This presents a question of statutory interpretation, of which our review is unlimited. *State v. Appleby*, 313 Kan. 352, 354, 485 P.3d 1148 (2021).

When we interpret statutes, we look to the language in the governing provision. If that language is plain and unambiguous, "we apply it as written." *State v. Queen*, 313 Kan. 12, 17, 482 P.3d 1117 (2021). Only when the language is unclear will we look beyond the provision to legislative history and various canons of construction to construe the Legislature's intent. *Queen*, 313 Kan. at 17.

12

Generally, "conduct, to be criminal, must consist of something more than mere action (or non-action where there is a legal duty to act); some sort of bad state of mind is required as well." 1 LaFave, Substantive Criminal Law, Nature of criminal law—Basic premises § 1.2(b) (3d ed. 2020). Kansas codifies this legal principle at K.S.A. 2020 Supp. 21-5202(a), which provides that "a culpable mental state is an essential element of every crime . . ." and that "[a] culpable mental state may be established by proof that the conduct of the accused person was committed 'intentionally,' 'knowingly,' or 'recklessly.'"

But some conduct is criminal even without a guilty state of mind. K.S.A. 2020 Supp. 21-5203(b) explicitly permits the criminalization of conduct regardless of the actor's mental state "if the crime is . . . a felony and the statute defining the crime clearly indicates a legislative purpose to impose absolute liability for the conduct described."

The State charged Dinkel with rape of a child. The Legislature included the definition of this crime in the general rape statute, which gives five definitions of rape:

"(a) Rape is:

(1) Knowingly engaging in sexual intercourse with a victim who does not consent to the sexual intercourse under any of the following circumstances:

(A) When the victim is overcome by force or fear; or

(B) when the victim is unconscious or physically powerless;

(2) Knowingly engaging in sexual intercourse with a victim when the victim is incapable of giving consent because of mental deficiency or disease, or when the victim is incapable of giving consent because of the effect of any alcoholic liquor, narcotic, drug

13

or other substance, which condition was known by the offender or was reasonably apparent to the offender;

(3) sexual intercourse with a child who is under 14 years of age;

(4) sexual intercourse with a victim when the victim's consent was obtained through a knowing misrepresentation made by the offender that the sexual intercourse was a medically or therapeutically necessary procedure; or

(5) sexual intercourse with a victim when the victim's consent was obtained through a knowing misrepresentation made by the offender that the sexual intercourse was a legally required procedure within the scope of the offender's authority." K.S.A. 2020 Supp. 21-5503.

The provision defining rape of a child includes no mental culpability language. However, this alone does not make the crime one of absolute liability. The Kansas Legislature has cautioned that even if the statute defining a criminal offense is void of any mental culpability language, "a culpable mental state is nevertheless required unless the definition *plainly dispenses* with any mental element." (Emphasis added.) K.S.A. 2020 Supp. 21-5202(d). Relying on this provision, the Court of Appeals held that the rape of a child provision plainly dispenses with a mental culpability requirement because it is the only provision in the statute that is void of any mental culpability language. 2018 WL 1439992, at *6.

We agree with the Court of Appeals conclusion, but we rely on a different statutory provision.

To decide whether rape of a child has a culpable mental state, the panel turned to K.S.A. 2020 Supp. 21-5202(d), which explains how to interpret a criminal definition when there is no mental culpability language in the statutory provision. Instead, we turn

14

to K.S.A. 2020 Supp. 21-5202(g). This subsection informs us how to interpret a provision of a statute when there is some mental culpability language in parts of the statute but not others:

> "(g) If the definition of a crime prescribes a culpable mental state with regard to a particular element or elements of that crime, the prescribed culpable mental state shall be required only as to specified element or elements, and a culpable mental state shall not be required as to any other element of the crime unless otherwise provided." K.S.A. 2020 Supp. 21-5202.

In *State v. Pulliam*, 308 Kan. 1354, 1363, 430 P.3d 39 (2018), we considered the mental culpability requirements of involuntary manslaughter. The involuntary manslaughter statute provides:

> "(a) [I]nvoluntary manslaughter is the killing of a human being committed:
>
> (1) Recklessly;
>
> (2) in the commission of, or attempt to commit, or flight from any felony . . .
>
> (3) In the commission of, or attempt to commit, or flight from an act described in K.S.A. 8-1567 . . . ; [or]
>
> (4) during the commission of a lawful act in an unlawful manner." K.S.A. 2020 Supp. 21-5405

Because the involuntary manslaughter statute includes the word "recklessly" in subsection (a)(1), we concluded that K.S.A. 2020 Supp. 21-5202(d) was inapplicable. Instead, we turned to K.S.A. 2020 Supp. 21-5202(g). Because "the involuntary manslaughter statute prescribes a culpable mental state for a particular element only

15

under subsection (a)(1)," we concluded that there was no required mental state under subsection (a)(4). We noted that "[i]t is obvious that the Legislature knew how to specify a culpable mental state for an alternative means in the involuntary manslaughter statute if it intended to do so." *Pulliam*, 308 Kan. at 1368.

Like the involuntary manslaughter statute, the rape statute includes a mental state—"knowing" and "knowingly"—and uses it to impose a mental culpability requirement on some of the elements of the various means of committing rape *except* for rape of a child. Thus, under K.S.A. 2020 Supp. 21-5202(g), there is no mental culpability requirement for rape of a child.

Dinkel argues that the absence of any mental culpability language in K.S.A. 2020 Supp. 21-5503(a)(3) does not mean that rape under this section is an absolute liability crime. Dinkel relies on *State v. Lewis*, 263 Kan. 843, 855, 953 P.2d 1016 (1998), and *United States v. United States Gypsum Co*, 438 U.S. 422, 98 S. Ct. 2864, 57 L. Ed. 2d 854 (1978), to support her assertion.

In *Lewis*, this court held that "far more than simple omission is necessary to justify dispensing with an intent requirement." 263 Kan. at 855. It cited *Gypsum* in support. In *Gypsum*, the United States Supreme Court came to the same conclusion after noting the general common law tradition that "mens rea is required" for all crimes. *Gypsum*, 438 U.S. at 437. Dinkel insists that the Legislature codified this notion in K.S.A. 2020 Supp. 21-5202(d) with the language explaining that the Legislature can only do away with a mental culpability requirement if it "plainly dispenses with any mental element."

Dinkel's argument is unpersuasive. Neither the panel's decision nor our analysis relies solely on the absence of a mens rea term in K.S.A. 2020 Supp. 21-5503(a). They both rely on the absence of any mens rea language in that subsection *compared to* the

16

presence of mens rea language in every other subsection describing the four other means to commit rape.

Dinkel also argues that the panel's conclusion that rape of a child under 14 requires no mental culpability conflicts with *State v. Prine*, 287 Kan. 713, 727-28, 200 P.3d 1 (2009), because in *Prine*, this court held that rape of a child under 14 is a general intent crime.

Prine was convicted of rape of a child under 14, then codified at K.S.A. 21-3502(a)(2). On appeal, Prine argued that the district court erred when it admitted under K.S.A. 60-455 evidence that Prine had previously sexually abused children. This court held that the evidence was probative regarding Prine's intent. It explained "the fact that Prine molested other young girls in the past, given today's jurors' common understanding of the psychology of those who commit such crimes, actually 'shed[s] some light' on the existence of intent in this case." This court noted "we use the word 'intent' in the broader sense of the overall guilty mind or mens rea required for proof of criminal behavior, rather than in the particular sense of the 'general intent' or 'specific intent' required for proof of certain crimes." It then observed that "Prine was charged with two general intent crimes," one being rape of a child under 14. *Prine*, 287 Kan. at 726-27.

*Prine* is not controlling. This court published the decision before the Legislature enacted K.S.A. 21-5202. Prior to that enactment, K.S.A. 21-3201 governed the mental culpability requirement of crimes and explained "[e]xcept as otherwise provided, a criminal intent is an essential element of every crime . . . ." This court had interpreted that statute to mean that a defendant must always have "a general intent to commit the prohibited act." *State v. Lile*, 237 Kan. 210, 212, 699 P.2d 456 (1985) (citing *State v. Cantrell*, 234 Kan. 426, 673 P.2d 1147 [1983]). Another statute allowed "guilt without

criminal intent" but only if the crime was "a misdemeanor, cigarette or tobacco infraction or traffic infraction . . . or . . . a violation of K.S.A. 8-1567 or 8-1567a." K.S.A. 21-3204.

In 2011, the Kansas Legislature's recodification of the Kansas Criminal Code took effect. As part of this recodification, it repealed both K.S.A. 21-3201 and K.S.A. 21-3204 and replaced them with K.S.A. 21-5202 and K.S.A. 21-5203. The substance of these mental culpability statutes changed with the recodification.

At the time of *Prine*, "criminal intent" was "an essential element of every crime" "except as otherwise provided." K.S.A. 21-3201. This court has explained that this meant the State had to prove that the defendant harbored a general intent, or that "the underlying act" was "intentional rather than accidental." *State v. Hobbs*, 301 Kan. 203, 207, 340 P.3d 1179 (2015) (citing *Gross v. State*, 24 Kan. App. 2d 806, 808, 953 P.2d 689 [1998]). K.S.A. 2020 Supp. 21-5202(a) now requires "a culpable mental state"—rather than "criminal intent." And the statute explicitly provides that a culpable mental state is not required so long as "the definition plainly dispenses with any mental element." K.S.A. 2020 Supp. 21-5202(d). Furthermore, if the statute prescribes a mental state regarding one element of the crime, no mental state is "required as to any other element of the crime." K.S.A. 2020 Supp. 21-5202(g). Finally, while a person could not be guilty of rape of a child without "criminal intent" at the time of *Prine* because it was a felony, that is not true today. K.S.A. 2020 Supp. 21-5203(b) now allows for a felony to be an absolute liability crime so long as the statute indicates a legislative purpose to impose such liability. Thus, although the language in the statute defining the crime of rape of a child has not changed since *Prine*, the Legislature's directive regarding what kind of mental culpability requirement that language creates has changed. *Prine* does not control our decision.

18

With this analysis, we affirm the Court of Appeals conclusion that there is no mental culpability requirement for rape of a child under 14. We acknowledge this might be an unintended result. The crime of statutory rape is historically considered a strict liability offense—but regarding the offender's knowledge of the victim's age, not the sexual intercourse. See Carpenter, *On Statutory Rape, Strict Liability, and the Public Welfare Offense Model*, 53 Am. U. L. Rev. 313, 333 (2003). This was understood as a way to protect minors "too young to understand the consequences of their actions." *United States v. Ransom*, 942 F.2d 775, 777 (10th Cir. 1991). It is possible the Kansas Legislature envisioned the same when it promulgated the rape of a child statute. But in doing so, it has—perhaps intentionally, perhaps not—removed any requirement that an offender have a culpable mental state regarding the sexual intercourse. Whether this was purposeful or not, it is the plain language of the statute, and we cannot interpret it otherwise. If the Legislature did not intend this result, it is obviously free to amend the statute.

The judgment of the Court of Appeals is affirmed in part and vacated in part. Dinkel's convictions are reversed, and the case is remanded for a new trial.

* * *

WILSON, J., concurring and dissenting:  I agree with the majority's conclusion that there is no mental culpability requirement for rape of a child. However, I disagree that Dinkel is entitled to a new trial based on her claim of ineffective assistance of counsel. I would affirm the district court's holding that Struble's performance was not deficient.

It is well-established that our test for evaluating a claim of ineffective assistance of counsel under the Sixth Amendment begins with the *Strickland* "performance" standard of review. This standard gives high deference to the attorney's actions, viewed

objectively without the distorting effects of hindsight, and evaluated from the attorney's perspective at the time. *Strickland v. Washington*, 466 U.S. 668, 688-89, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

In this case, defense counsel's overall loyalty, dedication, and skill as an attorney is not in question. The majority holds only that counsel's performance was objectively unreasonable for failure to stress that Dinkel's physical "acts" were not voluntary, as opposed to what she was "thinking." I disagree.

At trial, although he did not explicitly argue Dinkel's acts were nonvoluntary, Struble did offer all the relevant evidence on her behalf to show K.H. forcibly raped her and subsequently blackmailed her, and that she suffered from a mental disease or defect. This all supported a theory that Dinkel was not guilty of at least one charged count because her actions were not voluntary. And Struble plainly advanced this defense when he argued in closing that "Brooke Dinkel was the victim on the 26th . . . [t]hat's the act that occurred. She is not guilty."

The majority approves Dinkel's submission of this evidence to show lack of voluntariness but declares Struble ineffective because he failed to show the jury how it might use that information within the bounds of the law to find her not guilty. This criticism overlooks an important point. The duty to advise the jury on the applicable law rests firmly with the *judge*, not with counsel. *State v. McLinn*, 307 Kan. 307, 341, 409 P.3d 1 (2018) (noting district court has duty to instruct jury on applicable law to the theories of both the prosecution and the defendant); *State v. Shehan*, 242 Kan. 127, 130, 744 P.2d 824 (1987) ("The general rule in Kansas is that the trial court has a duty to instruct the jury on the law applicable to the theories of both the prosecution and the defendant as long as they are supported by competent evidence."). According to the

district court, Struble argued the correct path to acquittal, and he did give the appropriate legal basis for that path.

Despite this responsibility and being trained in the law, the judge did not think to include the instruction. This fact supports the proposition that Struble's failure was objectively reasonable. Further support is provided by the absence of a PIK instruction for statutory rape that parses the defendant's relevant voluntary "actus reus" from the defendant's irrelevant "mens rea"—this, despite the fact that statutory rape has been a strict liability crime for decades. Additionally, though a prosecutor's responsibility to do justice and follow the law is not the same as Struble's duty to the defendant, the law-trained prosecutor did not recommend such an instruction, either. Finally, the district judge observed that the "voluntary" instruction had never been requested or given before, so all those other attorneys missed it, too.

Admittedly, Struble's failure to request a "voluntary actus reus" instruction was not perfect advocacy. Clearly, a request for a "voluntary act" instruction would have at least created a more favorable appellate standard of review even if the judge refused to give the instruction. Yet, that is not the issue. Our inquiry should address only whether a reasonably competent attorney could miss the path to making that request.

Even without the voluntariness instruction, defense counsel persevered to the bounds of advocacy with his argument that it "doesn't make sense" to convict the defendant under these circumstances. I infer he understood the subtle difference in the court's instructions of when the jury "shall" acquit and when it "should" convict. Jury nullification is not favored in the law, but when a warrior archer is searching for weapons, even a poor excuse for an arrow looks good.

21

Under all of the circumstances, without the taint of hindsight, defense counsel's performance was objectively reasonable.

I would affirm the district court's holding that Dinkel did not receive ineffective assistance of counsel. I would also affirm the Court of Appeals' conclusion that there is no mental culpability requirement for rape of a child. Finally, I would remand this case to the Court of Appeals to consider Dinkel's remaining claims of error.

BILES and STEGALL, JJ., join the foregoing concurrence and dissent.