NOT DESIGNATED FOR PUBLICATION

No. 124,838

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

CLAYTON DEION WILMER,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Leavenworth District Court; GERALD R. KUCKELMAN, judge. Opinion filed November 4, 2022. Affirmed.

*Joseph A. Desch*, of Law Office of Joseph A. Desch, of Topeka, for appellant.

*Christopher Lyon*, assistant county attorney, *Todd Thompson*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before CLINE, P.J., ATCHESON and COBLE, JJ.

CLINE, J.: Clayton Deion Wilmer appeals the district court's denial of his K.S.A. 60-1507 motion because he claims the court erred by not appointing substitute counsel before trial. Although this issue ordinarily cannot be raised in a K.S.A. 60-1507 motion, Wilmer asserts that his counsel on direct appeal was ineffective for failing to mention it, constituting an exceptional circumstance which allows our consideration of the issue.

We find the district court correctly denied Wilmer's motion because he failed to establish his dissatisfaction with trial counsel was justified. And since he has not shown

appellate counsel was ineffective or that he was prejudiced by counsel's failure to raise this issue on direct appeal, he is not entitled to relief under K.S.A. 60-1507.

FACTS

Wilmer shot a passenger in a vehicle driven by the mother of Wilmer's child, while that child, who was only a few months old, was in the backseat. *State v. Wilmer*, No. 117,080, 2018 WL 1127679, at *1 (Kan. App. 2018) (unpublished opinion). A jury convicted Wilmer of aggravated assault, criminal discharge of a firearm at an occupied vehicle, criminal possession of a firearm, and aggravated endangering of a child.

*Motion to withdraw*

About six months before trial, Wilmer was sentenced in an unrelated matter by the same judge who later presided over Wilmer's jury trial. The attorney appointed to represent Wilmer in the criminal case underlying this appeal, Debra Snider, was also appointed to represent him in that matter. At the sentencing hearing, the district court took up a motion to withdraw from Snider after she said Wilmer had requested new counsel the day before. Snider told the court that her communications with Wilmer had broken down to the point where neither of them believed it was in Wilmer's best interests for her to continue to represent him. She did not know whether he wanted new counsel for the unrelated matter, but he had requested new counsel in the case underlying this appeal.

When the district court asked Wilmer if he wanted Snider to withdraw in the unrelated matter, Wilmer said Snider could continue representing him in that matter if she was willing. So the court proceeded with sentencing in the unrelated matter, taking up arguments from Snider and the prosecutor about defense objections to Wilmer's criminal history, Snider's departure motion, and Wilmer's sentencing requests.

2

After the district court pronounced Wilmer's sentence, it took up Snider's motion to withdraw. Snider explained that she had relayed a plea offer to Wilmer the day before at which point their communications had broken down. She repeated that Wilmer had then asked to be assigned new counsel and said she joined in that request.

The district court denied the motion, noting Wilmer had been dissatisfied with each of his three appointed trial attorneys, even filing his own motions despite being represented by counsel. The court did not believe Wilmer would ever find an attorney that would satisfy him. It then explained:

> "Miss Snider is a very experienced attorney. She has been involved in a number of trials with this Court and other jurisdictions, handling very serious cases similar to this case here. I can't appoint lawyers to hold your hand, Mr. Wilmer, and just be there all the time to talk with you and get you through this process. I can only provide an attorney that's qualified and experienced in the nature——to rise to the level of the nature of the offense that you're charged with.
>
> "I think Miss Snider has worked very hard on your case. I think the fact that you may disagree with some things, if the——but I don't know of any reasons she could not perform well even if your relationship is strained, because I think it's going to be strained with any lawyer that you have. So at this point, the motion to withdraw is denied."

Snider responded, "Judge, may I please note for the record that we are literally unable to effectively communicate at this point?" The district judge responded that they could use pen and paper to communicate suggestions and questions. Additionally, the judge stated, "If I just keep appointing lawyers, we'll just keep dragging this out, which does no one any good."

At that point, Wilmer complained about his lack of communication with Snider. He said that he only saw Snider the day before or the day of a court appearance. He claimed other inmates got letters twice a week from their attorneys, but none of his

appointed attorneys had done that. Then Snider expressed concern for her professional reputation and potential issues involving her liability insurance if she continued to represent Wilmer. Even so, Snider's motion to withdraw was denied.

*Wilmer's direct appeal*

After Wilmer was convicted, he appealed his sentence through different counsel. A panel of this court vacated the aggravated assault conviction due to a jury instruction error but affirmed the rest of the convictions. *Wilmer*, 2018 WL 1127679, at *1.

*Wilmer's K.S.A. 60-1507 motion*

Wilmer then filed a timely pro se motion for habeas corpus relief under K.S.A. 60-1507. In his motion, Wilmer asserted several reasons why both his trial and appellate counsel had provided ineffective representation. The district court appointed counsel for Wilmer and granted Wilmer an evidentiary hearing. Before the hearing, Wilmer filed a pro se supplement to his motion, alleging additional defects in trial counsel's representation. And his appointed attorney filed a supplement as well, articulating even more defects in representation, including the court's failure to adequately inquire into a potential conflict of interest between Snider and Wilmer when Snider moved to withdraw. This last issue is the only one Wilmer raises on appeal.

Both Snider and Wilmer testified at the evidentiary hearing on the various complaints. As for her request to withdraw, Snider testified she made the request because Wilmer sent a letter to the district court asking to have her removed and alleging she was ineffective as counsel. She did not agree she was ineffective but asked to withdraw because that is what Wilmer wanted. She noted, "[W]hen a client puts it in writing and asks to have you removed, then I think it needs to be brought forward to the judge. . . .

4

And in order to try to give my client the best opportunity to have the—the representation that he wanted, I asked to be allowed to withdraw."

Snider denied having problems communicating with Wilmer but acknowledged they had differences of opinion on strategy. She testified she had adequate time to communicate with him before trial, and probably met with him more often than she normally met with clients in custody. Since she and Wilmer had frequent disagreements on strategy, she said it took "more than an average amount of meeting and discussing to try to come to a mutually agreeable strategy and direction going forward in the case." After her motion to withdraw was denied, she could not recall Wilmer requesting her to be removed again.

Snider felt she effectively represented Wilmer despite their communication issues. She pointed out her successful trial results, including the district court's dismissal of the aggravated assault charge against the child's mother after the close of evidence. And despite aggravated assault not being a lesser included offense of attempted first-degree murder, the jury was instructed on attempted voluntary manslaughter and aggravated assault as lesser included offenses of attempted first-degree murder and convicted Wilmer of the lesser offense of aggravated assault. *Wilmer*, 2018 WL 1127679, at *1.

Wilmer testified there was a lack of communication between Snider and him, claiming they spoke only 5 or 10 minutes before any court hearing. Wilmer was not satisfied with Snider's representation and believed their relationship was contentious. But he admitted he was successful at trial, beating the attempted murder charge and having another charge dismissed.

The district court denied Wilmer's motion, noting it was within the court's discretion to determine whether Wilmer's dissatisfaction with his court appointed counsel warranted the discharge of Snider's services and appointment of new counsel, and

5

Wilmer did not establish justifiable dissatisfaction. The court also determined Wilmer did not establish trial and appellate counsel's representation was defective or that he had suffered prejudice from that representation.

Wilmer appeals the district court's denial of his K.S.A. 60-1507 motion. But the only issue he raises on appeal is the court's denial of Snider's motion to withdraw.

ANALYSIS

Generally, a habeas corpus proceeding may not replace a direct appeal to correct mere trial errors. An exception exists, however, when constitutional rights are implicated, and exceptional circumstances excuse the failure to raise the issue on direct appeal. Supreme Court Rule 183(c)(3) (2022 Kan. S. Ct. R. at 243); *State v. Barnes*, 37 Kan. App. 2d 136, Syl. ¶ 9, 149 P.3d 543 (2007).

Wilmer claims his appellate counsel was ineffective in failing to raise the district court's refusal to appoint substitute counsel in his direct appeal. We have found such ineffectiveness can rise to the level of exceptional circumstances, justifying consideration of the issue under K.S.A. 60-1507. *Cosby v. State*, No. 109,880, 2014 WL 4435848, at *4 (Kan. App. 2014) (unpublished opinion).

To establish a claim of ineffective assistance of counsel, the movant must establish counsel provided objectively deficient representation and the deficient representation prejudiced the proponent's legal proceedings—whether those proceedings involved a criminal trial or an appeal (the so-called "*Strickland* test"). See *Strickland v. Washington*, 466 U.S. 668, 688, 693, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Dinkel*, 314 Kan. 146, 148, 495 P.3d 402 (2021) (trial counsel); *Khalil-Alsalaami v. State*, 313 Kan. 472, 526, 486 P.3d 1216 (2021) (appellate counsel). Wilmer bears the burden of establishing both parts of the *Strickland* test. See *Mundy v. State*, 307 Kan. 280, 296, 408

P.3d 965 (2018). If Wilmer can establish that appellate counsel's failure to raise the issues on his direct appeal constituted deficient representation and prejudiced his trial or direct appeal, the merits of his claim are properly before this court, even if the claim should have been raised in Wilmer's direct criminal proceedings.

"[T]he failure of appellate counsel to raise an issue on appeal is not, per se, ineffective assistance of counsel." *Jenkins v. State*, 32 Kan. App. 2d 702, 704, 87 P.3d 983 (2004).

> "In an appeal from a criminal conviction, appellate counsel should carefully consider the issues, and those that are weak or without merit, as well as those which could result in nothing more than harmless error, should not be included as issues on appeal. Likewise, the fact that the defendant requests such an issue or issues to be raised does not require appellate counsel to include them. Conscientious counsel should only raise issues on appeal which, in the exercise of reasonable professional judgment, have merit." *Baker v. State*, 243 Kan. 1, 10, 755 P.2d 493 (1988).

Thus, Wilmer's appellate counsel need only have raised meritorious issues. This means if the district court did not err, or if the denial caused Wilmer no prejudice, then the issue lacked merit and Wilmer's appellate counsel's representation was not deficient.

*The district court did not err when failing to appoint substitute counsel.*

As noted above, the standard of review for the merits of Wilmer's claim is abuse of discretion. *State v. McGee*, 280 Kan. 890, 894, 126 P.3d 1110 (2006). And Wilmer bears the burden of establishing it. *State v. Hulett*, 293 Kan. 312, 319, 263 P.3d 153 (2011). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) stems from an error of law; or (3) stems from an error of fact. *State v. Levy*, 313 Kan. 232, 237, 485 P.3d 605 (2021).

Both the federal and Kansas Constitutions guarantee the right of criminal defendants to have the assistance of counsel. *State v. Brown*, 300 Kan. 565, 574, 331 P.3d 797 (2014). Criminal defendants also have the right to *effective* assistance of counsel. *State v. Galaviz*, 296 Kan. 168, 174, 291 P.3d 62 (2012). That is not to say, however, that defendants have the right to choose which lawyer will be appointed to represent them. *Brown*, 300 Kan. at 575.

If a defendant is unhappy with their appointed counsel and is seeking substitute counsel, then they must show justifiable dissatisfaction:

> "[T]o warrant substitute counsel, a defendant must show 'justifiable dissatisfaction' with appointed counsel. Justifiable dissatisfaction includes a showing of a conflict of interest, an irreconcilable conflict, or a complete breakdown in communications between counsel and the defendant. But ultimately, '"[a]s long as the trial court has a reasonable basis for believing the attorney-client relation has not deteriorated to a point where appointed counsel can no longer give effective aid in the fair presentation of a defense, the court is justified in refusing to appoint new counsel."' [Citations omitted.]" *State v. Breitenbach*, 313 Kan. 73, 90, 483 P.3d 448, *cert. denied* 142 S. Ct. 255 (2021).

And once a defendant has shown justifiable dissatisfaction, the district court must inquire into the attorney-client relationship. *Brown*, 300 Kan. at 575.

Importantly, if "the defendant's dissatisfaction emanates from a complaint that cannot be remedied or resolved by the appointment of new counsel . . . the defendant has not shown the requisite justifiable dissatisfaction." *Breitenbach*, 313 Kan. at 90-91. In other words, the substitute must not encounter the same problem as the first appointed counsel. The focus of the justifiable dissatisfaction inquiry is the adequacy of counsel in the adversarial process, not the accused's relationship with his or her attorney. *State v. Staten*, 304 Kan. 957, 972, 377 P.3d 427 (2016).

8

In Wilmer's case, Snider was Wilmer's third appointed trial counsel before his criminal trial. And he expressed discontent with each of them. This persistent disapproval suggests Wilmer's complaint would not be remedied by appointment of a new attorney. "[U]ltimately, as long as the trial court has a reasonable basis for believing the attorney-client relation has not deteriorated to a point where appointed counsel can no longer give effective aid in the fair presentation of a defense, the court is justified in refusing to appoint new counsel." *State v. Bryant*, 285 Kan. 970, Syl. ¶ 14, 179 P.3d 1122 (2008).

Wilmer has alleged no trial error caused by his alleged communication issues with Snider. In fact, he admits she was successful in her representation of him. As noted above, Snider successfully moved for acquittal of the charge of aggravated assault against the child's mother and the State withdrew the charge of aggravated battery of the passenger as an alternative to attempted first-degree murder. The jury also convicted Wilmer of a level 7 person felony instead of a level 1 person felony when it convicted him of aggravated assault of the passenger instead of attempted first-degree murder. *Wilmer*, 2018 WL 1127679, at *1; see K.S.A. 2021 Supp. 21-5412(e)(2); K.S.A. 2021 Supp. 21-5301(c)(1); K.S.A. 2021 Supp. 21-5402(a)(1), (b).

These successful outcomes evidence that Snider was able to effectively represent Wilmer despite any claimed communication issues and that Wilmer suffered no prejudice from her continued representation. Further, in the six months between Snider's motion and trial, the record reveals no additional complaints from Wilmer about Snider's representation. Nor could Snider remember Wilmer requesting her removal again.

As in *Cosby*, the district court found no merit in the complaint of a breakdown in communication and believed instead that Snider could and was effectively representing Wilmer despite their strained relationship. See 2014 WL 4435848, at *7. The district court's finding that Wilmer was not justifiably dissatisfied with Snider was not arbitrary, fanciful, or unreasonable, nor did it stem from a legal or factual error. As a result,

9

appellate counsel's failure to raise this issue on direct appeal was not defective representation. The district court did not err in denying Wilmer's habeas corpus motion on this issue.

Affirmed.

* * *

ATCHESON, J., concurring: I concur in the outcome we reach today affirming the Leavenworth County District Court's denial of Defendant Clayton Deion Wilmer's habeas corpus challenge to the jury verdicts finding him guilty of discharging a firearm into an occupied vehicle and other crimes. Wilmer's quest for relief from the convictions under K.S.A. 60-1507 fails not because the district court properly handled his pretrial motion for appointment of a new lawyer—it didn't—but because he cannot show the result ultimately compromised his defense at trial. Wilmer, therefore, is entitled to no relief in this collateral attack on the convictions. In short, fortuity overtook the district court's fumbling of the pretrial motion. And at this juncture, no harm equates to no foul.

Wilmer personally drafted the pretrial motion to replace Debra Snider as his court-appointed lawyer. She was the third lawyer to represent him in this case and had been appointed to represent him in another case in Leavenworth County that was then set for sentencing. When a criminal defendant formally states he or she wants to replace an appointed lawyer, the district court typically ought to conduct a preliminary inquiry to determine if the request has a colorable basis. *State v. Brown*, 300 Kan. 565, 575, 331 P.3d 797 (2014). A defendant should be permitted a replacement lawyer for "'justifiable dissatisfaction,'" entailing an actual conflict of interest on the part of his or her present lawyer, an irreconcilable disagreement with the lawyer, or a complete breakdown in communication. *State v. Pfannenstiel*, 302 Kan. 747, 759-60, 765, 357 P.3d 877 (2015).

10

We review a district court's denial of a motion for a new lawyer for abuse of judicial discretion. 302 Kan. at 760-61. A district court exceeds that discretion if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *State v. Darrah*, 309 Kan. 1222, 1227, 442 P.3d 1049 (2019); *State v. Ward*, 292 Kan. 541, Syl. ¶ 3, 256 P.3d 801 (2011). The party asserting an abuse of judicial discretion bears the burden of proving the point. *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018); *Gannon v. State*, 305 Kan. 850, 868, 390 P.3d 461 (2017).

Here, Wilmer sought to oust his third appointed lawyer. As the district court correctly observed, criminal defendants sometimes make complaints about their appointed lawyers as a device to delay the trial of their cases and, in so doing, to garner some perceived tactical advantage. See *Pfannenstiel*, 302 Kan. at 764. The district court imputed that sort of motive to Wilmer, especially since he had already gone through two lawyers and simply asserted a generic complaint that Snider wasn't meeting or otherwise communicating with him often enough about the upcoming trial. Moreover, Wilmer told the district court he wanted Snider to continue representing him in the other case, suggesting something other than a substantial dissatisfaction with Snider prompted his request.

Nonetheless, at the hearing, Snider informed the district court that in her view her professional relationship with Wilmer had so "broken down" they could no longer "communicate effectively." For that reason, she asked the district court to appoint a substitute lawyer for Wilmer. Without inquiring about the genesis of the collapse or whether Snider considered the breakdown irreconcilable, the district court hastily denied the lawyer's request and suggested she and Wilmer could communicate by writing notes to each other. The response was perfunctory, simplistic, and inadequate.

11

The two issues presented to the district court at the hearing were different: Wilmer asserted he and Snider were not talking often enough about the case; Snider told the district court that when they did talk, they no longer interacted in a constructive way. The district court failed to delve into Snider's contention at the hearing on the motion and, thus, lacked a sufficient factual basis to deny her request out of hand. The district court, therefore, abused its discretion and committed error. But that doesn't translate into an error necessarily mandating relief for Wilmer now in a 60-1507 proceeding. The district court's mistaken denial of a motion to appoint a new lawyer for a criminal defendant may be excused as harmless, especially when the mistake entails a failure to sufficiently inquire and the issue revolves around an ostensible breakdown in communication. See *United States v. Senke*, 986 F.3d 300, 314-15 (3d Cir. 2021); *United States v. Horton*, 693 F.3d 463, 467 (4th Cir. 2012).

In this 60-1507 proceeding, Wilmer argues that the lawyer handling the appeal of the direct criminal case provided constitutionally inadequate representation by failing to brief the district court's denial of the pretrial motion for appointment of substitute counsel. To succeed, Wilmer must show both that his legal representation in the direct appeal "fell below an objective standard of reasonableness" guaranteed by the right to counsel in the Sixth Amendment to the United States Constitution and that absent the substandard lawyering there is "a reasonable probability" the outcome in the criminal case would have been different. *Strickland v. Washington*, 466 U.S. 668, 687-88, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Phillips*, 312 Kan. 643, 676, 479 P.3d 176 (2021).

A lawyer is not constitutionally required to raise every possible issue on direct appeal in a criminal case and, rather, is expected to focus on those with some reasonable chance of success, while discarding those with insufficient legal or factual support. See *Baker v. State*, 243 Kan. 1, 9-10, 755 P.2d 493 (1988); *Warren v. State*, No. 123,547, 2022 WL 816313, at *3 (Kan. App. 2022) (unpublished opinion). Here, the record on

direct appeal would not have supported any substantive relief for Wilmer based on the denial of the pretrial motion for a new lawyer, since the district court failed to sufficiently inquire into Snider's stated concerns about the deteriorated communications. At best, the remedy would have required a remand to the district court to conduct an expanded hearing to flesh out those concerns. See *State v. Moyer*, 306 Kan. 342, 383-84, 410 P.3d 71 (2017). That inquiry may have established good grounds for denying Snider's request to be replaced because of her eroding professional relationship with Wilmer. For example, Snider ultimately may have attributed the breakdown to Wilmer's deliberate and obstinate refusal to interact with her—a circumstance the district court could have viewed as nothing more than an improper second front in Wilmer's own concerted effort to delay the trial. Or Snider might have agreed that in response to some targeted questioning from the district court she would have conceded she likely could repair the relationship sufficiently to represent Wilmer adequately at trial. That sort of testimony would have shown the district court reached the right result in denying the motion for a new lawyer, albeit through an impermissibly truncated process.

But even if Snider were to testify that at the time of the hearing on the motion for a new lawyer, she would have categorically told the district court her professional relationship with Wilmer had been broken beyond repair, that would not itself warrant reversing Wilmer's convictions and granting him a new trial. Wilmer would still have to show that Snider's representation of him at trial was substantially compromised as a result of the deteriorated lawyer-client relationship. That is, Wilmer would have to establish the denial of the motion for a new lawyer resulted in a constitutionally inadequate trial.[*]

[*] The analysis would be different if a defendant sought to replace an appointed lawyer laboring under an active conflict of interest and the district court declined to do so. Depending on the nature of the conflict, a defendant might not have to show any actual prejudice in his or her representation at trial or only that he or she might have received a materially better defense absent the conflict. See *State v. Moyer*, 309 Kan. 268, 283-84, 434 P.3d 829 (2019); *Fuller v. State*, 303 Kan. 478, 487, 363 P.3d 373 (2015);

*Sola-Morales v. State*, No. 118,451, 2019 WL 6041443, at *6-7 (Kan. App. 2019) (unpublished opinion). Here, Snider did not have a conflict of interest.

To that end, the lawyer handling Wilmer's direct appeal could have requested a remand to the district court for a *Van Cleave* hearing to explore the breakdown in communication and whether Snider had been constitutionally ineffective during the trial as a result. See *State v. Hilyard*, 316 Kan. 326, 338, 515 P.3d 267 (2022); *State v. Van Cleave*, 239 Kan. 117, 120-21, 716 P.2d 580 (1986). But that didn't happen. A successful request for a *Van Cleave* hearing would have accelerated the review of Snider's representation of Wilmer leading up to and during the trial. It would have replicated the evidentiary hearing the district court did hold as part of Wilmer's 60-1507 proceeding. See *Brown v. State*, No. 119,063, 2018 WL 6715411, at *8 n.1 (Kan. App. 2018) (unpublished opinion) (Atcheson, J., concurring).

At the 60-1507 hearing, Snider testified that she capably defended Wilmer ahead of and at the jury trial. And implicit in that testimony, Snider necessarily suggested she was able to communicate sufficiently with Wilmer, although the two apparently disagreed on certain strategic points. As outlined in the majority opinion, Snider achieved an objectively beneficial result for Wilmer by securing a not guilty verdict on the attempted murder charge—the most serious lodged against him—and dismissal of an aggravated assault charge.

More to the point here, Wilmer offered no evidence that Snider failed to do something a reasonable lawyer would have done or did something a reasonable lawyer would not have in conducting the trial. Likewise, he did not show Snider refused to call witnesses who would have advanced the defense or otherwise ignored particular exculpatory evidence. In short, Wilmer could not establish that Snider's representation of him fell below the constitutional standard required under *Strickland*. Nor could he show that the ostensible breakdown in communication Snider referred to during the hearing on

14

his motion for a new lawyer caused demonstrable prejudice or diminution in the defense Snider presented at trial—thereby falling well short of establishing the second requirement for relief under *Strickland*. On appeal, Wilmer essentially argues that the district court's error in ruling on the pretrial motion for a new lawyer in and of itself requires reversal of his convictions, so the lawyer handling the direct appeal was constitutionally inadequate for not raising the point. But, as I have explained, the premise underlying the argument is faulty and incorrectly treats the district court's ruling on the pretrial motion as a structural error requiring reversal without any showing of prejudice when it is not. See *Boldridge v. State*, 289 Kan. 618, 627-28, 215 P.3d 585 (2009) (outlining nature of structural error); *State v. Reed*, No. 120,613, 2021 WL 1228097, at *4 (Kan. App. 2021) (unpublished opinion) ("A structural error requires the reversal of any convictions regardless of demonstrable prejudice because it impermissibly corrupts the proceedings in a way that defies review for harmlessness.").

In sum, Wilmer has not demonstrated that any purported deterioration in communications with Snider deprived him of either a constitutionally fair trial or constitutionally adequate legal representation up to and during the trial. Absent such a showing, the district court's mistake in failing to inquire sufficiently into Snider's concern voiced at the pretrial hearing that she and Wilmer had ceased communicating effectively amounts to a harmless error that does not call into question the outcome of the direct criminal case. On that basis, I concur in affirming the denial of Wilmer's 60-1507 motion attacking his convictions.

15